JOHN L. PENNELL, Administrator of ANNIE M. PENNELL, deceased,
   *vs.* THE MAYOR AND COUNCIL OF WILMINGTON, a Municipal
   Corporation existing under the Laws of the State of Dela-
   ware.

*Case Stated—Municipal Corporation—Public Park; Defective
   Condition of—Personal Injuries—Liability of City—
          Pleading—Demurrer.*

    The plaintiff brought an action against the defendant to recover
damages for injuries resulting from defective or dangerous conditions in
one of the public parks of the City of Wilmington. To the plaintiff's
declaration the defendant demurred on the ground that the City is not
liable in damages for injuries resulting from defective or dangerous con-
ditions in its public parks.

(<em>January</em> 10, 1906.)

    LORE, C. J., and SPRUANCE, PENNEWILL and BOYCE, Asso-
ciate Judges, sitting as a Court in Banc, on January 10th, 1906,
in and for New Castle County.

    *William S. Prickett* for plaintiff.

    *Sylvester D. Townsend, Jr.*, City Solicitor, for defendant.

    ACTION ON THE CASE (No. 139, February Term, 1903), to
recover damages against the defendant for injuries to the plain-
tiff's decedent, resulting from defective or dangerous conditions
in one of its public parks in the City of Wilmington, which de-
fective or dangerous condition it was alleged, the said defendants
knew to exist.

    General demurrer to plaintiff's declaration.

    Plaintiff's declaration consisted of ten counts as follows:
    The first count charged that the defendant, having control
of the parks of the City of Wilmington by its negligence suffered
and allowed Delamore Park to be and remain in a defective, un-

safe and dangerous condition by reason of a certain water-closet open for public use therein, not having the seat thereof provided with suitable and safe appliances; and that plaintiff's intestate, an infant under five years of age, while lawfully using said water-closet fell through or over the seat into the well, and by such fall caused by said negligence was injured.

The second count charged substantially the same as the first adding thereto that the well was further dangerous by reason of its being permitted to contain a large amount of water or liquid refuse.

The third count charged that the defendant allowed said park so open for public use to be and remain in a defective, unsafe and dangerous condition by reason of a certain well connected with a certain water-closet being suffered and permitted to contain a large amount of water and liquid refuse and said well not being provided with suitable and safe appliances. That by reason of said negligence, plaintiff's intestate, an infant under the age of five years fell into said well and into said water or liquid refuse and was injured.

The fourth count charged that defendant by its negligence suffered one of its parks to be and remain in a defective and dangerous condition by reason of a certain water closet therein and by reason of not providing the seat of said water-closet with suitable and safe appliances to protect the public from falling through or over said seat; and that as a result of such negligence plaintiff's intestate, an infant under five years of age, fell through said seat and was injured.

The fifth count charged the defendant with negligence, in that it suffered one of the parks to be and remain in a defective, unsafe and dangerous condition by reason of a certain water closet situated in said park, by reason of the seat of said water closet not being provided with suitable and safe appliances to protect persons using said water closet from falling through the seat into the well of said water closet; and that plaintiff's intestate, an infant under the age of five years, fell through said seat into the well of said water-closet and was injured.

The sixth count charged that defendant constructed in one of the public parks a water-closet for the use of the public; that it was the duty of defendant to keep and maintain said water-closet in a reasonably safe condition; that said defendant in disregard of its duty suffered and permitted one of the seats of said water-closet to be and remain in a dangerous condition in not being provided with suitable and safe appliances to protect the public from falling through the seat into the well of said water-closet; that by reason of such negligence plaintiff's intestate, an infant under five years of age, fell through or over the seat into the well and was injured.

The seventh count charged that the defendant disregarded its duty in that it did not so construct the water-closet that the same was reasonably safe in that one of the seats of said water-closet was not provided with suitable and safe appliances to prevent persons using said water-closet from falling over the seat into the well; and that by reason of said negligence, plaintiff's intestate fell into said well and was injured.

The eighth count charged that defendant negligently and carelessly suffered one of the seats of the water-closet to be without suitable and safe appliances and negligently suffered and permitted the well to contain a large amount of water or liquid refuse and negligently and carelessly suffered and permitted the well to be and remain in such an unsafe and dangerous condition; that by reason of said negligence plaintiff's intestate fell through the seat and into the water or liquid refuse contained in said well and was injured.

The ninth count charged that defendant negligently and carelessly suffered and permitted a water-closet to be and remain in an unsafe and dangerous condition, said water-closet not being reasonably safe, in that one of the seats was not provided with suitable appliances to protect persons from falling through the seat into the well; that by reason of said negligence plaintiff's intestate fell through the seat into the well and was injured.

The tenth count charged that the defendant negligently permitted a well used in connection with a water-closet in a public

park to be in a dangerous condition, the said well not being provided with suitable and safe appliances to prevent falling into said well; that by reason of such negligence, plaintiff's intestate fell through or over the seat into the well and was injured.

The defendant demurred to the above declaration on two grounds:

1: That the defendant is in no case liable in damages for injuries resulting from defective or dangerous conditions in its public parks:

2: That defendant is in no case liable in damages for injuries resulting from defective or dangerous conditions of water-closets for public use in its public parks:

Briefly stated, the argument of the defendant in support of the demurrer is as follows:

1: Governmental instrumentalities, charged with the performance of governmental duties are governed by the rule that sovereignty is not amenable to a suit of a private individual for neglect in the discharge of public duties, unless such liability is expressly created by statute.

2: Governmental duties are those imposed upon a municipality as the representatives of the State, such as duties relating to the public peace, health, and education, and as well duties growing out of their legislative and judicial or discretionary powers. Many of these duties are not absolute in their nature, but are rather entrusted to the judgment and discretion of the municipal authorities. Duties of this character are commonly referred to in the cases as legislative and judicial or discretionary duties. Under this head are included all those duties that involve deliberation, judgment, and discretion in their exercise, whether the result attained by that exercise is the accomplishment of purposes public and governmental or private and municipal. As to such duties the corporation is not bound in the first instance to act at all, nor is it, if it proceeds to act, liable for negligence in their performance.

3: The Act creating the Board of Park Commissioners provides that the Board shall have authority to open public parks

for the promotion of the health and recreation of the people of Wilmington and its vicinity. The preservation of the public health is the duty of the State and the Board of Park Commissioners act only for the State. The duty is therefore governmental.

4: Liability of a superior or employer for the acts of his servant or agent rests upon the right of the former to select his own servant or agent; to discharge him if he proves to be not competent, or skillful, or well behaved; to determine his duties; and to direct and control him while engaged in the performance of them. This broad right is the whole foundation of the doctrine of *respondeat* superior. If such right does not exist in any particular case, the defendant cannot properly be regarded as the superior of the person who caused the damage, and this doctrine, therefore, can have no application to it. A municipal corporation as a superior or employer occupies a unique position. Though an agent or official may derive his appointment from it, and be engaged in the performance of its duties, he may nevertheless not be its agent within the above rules. The ultimate question in every case appears to be: What was the nature of the duty in the performance of which the negligent agent or official was engaged at the time of the injury or damage? Was it a public, governmental duty imposed by the Legislature upon such official when selected by the corporation? If it was, the universal rule is that the relation of superior and agent does not exist and that consequently the maxium,—*respondeat* superior does not apply. The general principle is well settled that where a corporation elects or appoints an officer in obedience to an act of the Legislature, who is to perform some public service in which the corporation itself has no private interest, and from which it derives no special advantage in its corporate capacity, such officer is not to be regarded as an agent of the corporation for whose negligence or want of skill it can be held responsible. In every such case the officer is a purely public official, whose functions are the performance of governmental duties, which are imposed and defined by the Legislature and not by the corporation. The power of the latter in the premises is exhausted when

it has appointed or elected the officer. His official tenure and the manner of performing his official duties are independent of the will of the corporation and are determined by the provisions of the act of the Legislature under which he was appointed or elected. It necessarily follows from this that there is no ground upon which the corporation can fairly be considered as the superior of such officer, and so liable for his *tortuous* acts. This rule certainly has application to the case at bar. The Board of Park Commissioners is an independent Board. It has absolute control over the parks and no other City Department; not even the Council, the Legislative body of the City, can interfere with or control it. The Water Commissioners cannot lay pipes in the parks without the consent of the Board of Park Commissioners, nor can any other City Department perform any work relating to municipal improvement in the parks without the consent of the Board of Park Commissioners.

The following cases all support one or more of the propositions above set forth:

4 *Dillin Mun. Corp. 4th Ed. par.* 974; *Ulrich vs. St. Louis*, 112 *Mo.* 138; *Missouri vs. Chicago*, 5 *Mun. Corp. Cases* 290; *Clark vs. Waltham*, 128 *Mass.* 567; *Steele vs. Boston*, 128 *Mass.* 583; *Wild vs. Paterson*, 47 *N. J. L.* 407; *Blair vs. Granger*, (*R. I.*) 8 *Mun. Corp. Cases* 294; *Bamber vs. Rochester*, 26 *Hun.* 587; *Maxmillian vs. Mayor*, 62 *N. Y.* 160; *Ham vs. Mayor*, 70 *N. Y.* 459; *Benten vs. Boston Hospital*, 140 *Mass.* 13; *Bryant vs. St. Paul*, 33 *Minn.* 289; *Connelly vs. Nashville*, 100 *Tenn.* 262; *Bigelow vs. Randolph*, 14 *Gray* 541; *Tait vs. Greensboro* (*N. C.*) 24 *L. R. A.* 871; *Lane vs. Township*, 58 *Ia.* 462; *Mayor vs. Worman* (*N. Y.*) 67 *Fed.* 348; *Diehm vs. Cincinnati*, 25 *Oh.* 305; *Bailey vs. New York*, 38 *Am. Dec.* 669; *Condict vs. Jersey City*, 46 *N. J. L.* 157; *Love vs. Atlanta* (*Ga.*) 51 *Am. St. Rep.* 64; *Small vs. Danville*, 51 *Me.* 389; *Dodge vs. Granger* (*R. I.*) 15 *L. R. A.*781;*Tindlay vs. Salem*, 137 *Mass.* 171; *Hill vs. Boston*, 122 *Mass.* 334; *Eastman vs. Meredith*, 36 *N. H.* 284; *Haight vs. Mayor* 24 *Fed.* 93; *Curran vs. Boston*, 151 *Mass.* 585; *Tindlay vs. Salem* (*Mass.*) 6 *A. & E. C. C*, 22; *Woodan vs. New Bedford*, 131 *Mass.* 23; *Davis vs. Lebanor*, 4

*Mun. Corp. Cases*, 1; *Snider vs. St. Paul*, 51 *Minn.* 466; *Folk vs. Milwaukee* 84 *N. W.* 420; *Wheeler vs. Cincinnati* 19 *Ch. St.* 19; *Danaher vs. Brooklyn*, 51 *Hun.* 563; *Miller vs. Minnesota*, 75 *Minn.* 131; *Welsh vs. Rutland* 56 *Vt.* 228; *Hafford vs. New Bedford*, 82 *Mass.* 297; *Greenwood vs. Louisuille*, 13 *Busch.* 226; *Pettingill vs. Chelsea*, 161 *Mass.* 369; *Fisher vs. Boston*, 104 *Mass.* 87; *Robinson vs. Evansville*, 87 *Ind.* 334; *Wilcox vs. Chicago*, 107 *Ill.* 334; *McFadden vs. Jewell*, (*Ia.*) 60 *L. R. A.* 401; *Witfield vs. Paris*, 48 *Texas* 431; *Ins. Co. vs. Keeseville* 148 *N. Y.* 46; *Laclef vs. Concordia*, 41 *Kan.* 323; *Frederick vs. Columbus*, 58 *Oh. St.* 538; *Russell vs. Tacoma*, 44 *A. & E. C. C.* 572; *Irvine vs. Chattanooga*, 101 *Tenn.* 291; *Jewett vs. New Haven*, 38 *Conn.* 368; *Saunders vs. Fort Madison*, 111 *Ia.* 102; *Burrill vs. Augusta*, 78 *Me.* 118; *Fisher vs. Boston*, 104 *Mass.* 87; *Grube vs. St. Paul*, 34 *Minn.* 402; *Kies vs. Erie*, 135 *Pa. St.* 144; *Eddy vs. Ellicottville* 35 *N. Y. App. Div.* 256; *Freel vs. Crawfordville*, 142 *Ind.* 27; *Nicholson vs. Detroit*, 129 *Mich.* 246; *Lanher vs. Williams*, 112 *Ia.* 428; *Reynolds vs. Little Falls*, 33 *N. Y. App. Div.* 88; *Corning vs. Saginaw*, 116 *Mich.* 74; *Kinnare vs. Chicago*, 171 *Ill.* 322.

The plaintiff in opposing demurrer argued the following propositions:

*The Board of Park Commissioners of the City of Wilmington is an agency provided under law, to carry on and administer a part of the corporate functions of the said City of Wilmington, whose duty it is to maintain and care for such public parks in the said City of Wilmington as shall be acquired by The Mayor and Council of Wilmington. Upon said Board as an agency of the City, rests the duty to maintain and care for said parks, and with such duty arises a corresponding liability for a failure or neglect in its performance.*

In order that the State may perform its functions, it is necessary for it to be represented by agencies of government, but where these agencies merely *perform governmental functions* of the *State* and acquire no individual existence, to hold them responsible for negligence would manifestly be the same as hold-

ing the *sovereign power* answerable. Such unincorporate agencies occupy the same position as the State itself, and are protected by the principle which gives freedom of responsibility to the State; but when any State agency becomes a corporation, it thereby acquires an individuality distinct from the soverign power, and the principle stated does not prevent the incorporate body from being held liable for its own negligence.

Every incorporate municipality therefore is of a dual character; on the one hand, it is an agency of the State performing governmental and political duties, and on the other it has a distinct individuality with personal privileges and rights, which give rise to personal requirements, duties and responsibilities.

There is no question that a municipal corporation is not liable for the exercise of govermental powers and duties, such as keeping the peace, enforcing laws and ordinances, preserving the public health, preventing fires, caring for the poor, and carrying on a system of education.

But where the State imposes a ministerial duty on a distinct municipality or where such duty arises from the common relations of life, it must be carefully discharged, and if there is a failure to exercise reasonable care, the corporation will be liable for the damage occasioned thereby. The most prominent illustration of this duty is the obligation which rests upon municipalities to keep their highways in reasonably safe condition for use and to keep drains and sewers in a similar condition.

*Jones on Negligence of Municipal Corporations*, Sec. 19, 42-43.

In Massachusetts and the States which have followed its lead, the decisions hold that for any negligence in the performance of these municipal duties, the city is not liable in the absence of express statutes; an examination of the early decisions in these States will show that the entire doctrine, is built upon the case of *Russel vs. Men of Devon*. 2 *T. Rep.* 667. For the purpose of understanding the theory on which these cases are decided and to show that these cases and the cases which follow them have no authority in this State and other States, which take the same

view of the municipal liability for negligence as prevails in Delaware, it is necessary to consider briefly the growth of the doctrine in England and in this country which is generally designated as the Massachusetts Doctrine.

In the case of *Thomas vs. Sorrel, Vaughan* 330-340, which was decided in the latter half of the 17th century, the law is announced as follows:

"And note, if a man have particular damage by a foundrous way, he is generally without remedy, though the nuisance is to be punished by the King. The reason is because the foundrous way, a decayed bridge or the like, are given over to be repaired by some Township, Vill, Hamlet or a County, which are not corporate, therefore no action lies against them for a particular damage; but if a particular person or body corporate be to repair a certain highway or bridge, and a man is endamaged by the foundrousness of the way or the decay of the bridge, he may have his action against the person or body corporate."

This case clearly set out the common law liability in England of municipal corporations for negligence and the reason why unincorporated bodies of the State such as counties are not liable.

The case of *Russel vs. Men of Devon* above referred to was an action of an individual against the inhabitants of a county for damages received from neglect to keep a bridge in repair. The Court decided that the action was not maintainable, on the ground that it was not brought against anyone capable of being sued, the county being an unincorporated subdivision of the State; and therefore said decision simply re-established the rule recognized by Chief Justice Vaughan above quoted, but is in no sense an authority for the doctrine that an incorporated municipality or governmental agency would not be liable for damages. In England the subsequent decisions fully establish the principle that an action can be maintained against a public corporation for damages suffered by reason of neglect of such corporation to carefully discharge its duties such as keeping highways in safe condition, although no such action is given by statute.

*Kent vs. Worthington Local Board L. R.* 10 *Q. B. D.* 121; *Bourough of Bath-hurst vs. MacPherson, L. R. App. Cas.* 256; *Hartnell vs. Ryde Commissioners,* 4 *B. S.* 361.

In the case of *Riddle vs. Prop. of Lock,* 7 *Mass. Rep.* 169, the Court says: "Although municipal corporations are liable to information for neglect of a public duty, yet is is settled in the case of *Russel vs. Men of Devon* that no private action can be maintained against them for a breach of their corporate duty, unless action be given by statute. "And practically similar language is used in the case of *Mower vs. Leicester,* 9 *Mass. Rep.* 247.

It is thus seen that the Massachusetts cases and the doctrine growing out of them are not even properly based upon the English cases and proceed upon such ground that they cannot be regarded as any authority in this State.

The manifest injustice and hardship of the situation arising from these decisions led Massachusetts and the other State following its lead to undertake to rectify the situation by passing statutes expressly making municipal corporations liable for damages resulting from neglect of the municipality with respect to sewers and streets. These statutes are collected and commented on by *Dillon on Municipal Corporations, Volume 2, Section* 1000, *etc.*

Owing to the fact that at the time these statutes were passed public parks were of little importance, they were not included within the terms of the statutes. Therefore the States which have passed these statutes hold that a municipal corporation is not liable for injuries arising from neglect of the municipal corporation with respect to parks.

It will be found that practically all the cases which can be cited in support of the demurrer of the defendant in this case arise in States where the liability of a municipal corporation is fixed by statute and do not arise, as in this State, from the recognized common law liability of municipal corporations, and therefore are entirely without authority in this State.

The existence of the common law implied liability for negligence of a municipal corporation in discharge of its ministerial

duties is now recognized as the true rule by a large majority of the States and by the Courts of the United States.

*Jones on Negligence of Municipal Corporations, Sec. 53.*

In this State no authorities need be cited to show that the City is liable for damages arising from the neglect of the City to keep its streets and highways in repair, as such liability is fixed by an unvarying line of decisions, and this arises from the common law implied liability, that where a power is given and a duty imposed a corresponding liability arises for the exercise of that power and the discharge of that duty.

*Magarity vs. City of Wilmington, 5 Houst. 530; Benson vs. Mayor and Council, 9 Houst. 359; Seward vs. Mayor and Council, 2 Marvel 189; Colburn vs. City of Wilmington, 4 Pennewill 443.*

Though no case has been decided in this State which determines the liability of the City for neglect in the care or maintenance of a park, yet the liability of the City for injuries resulting from defects in the streets, arises under the administration of the streets by the Street and Sewer Department, which is a distinct Board or agency created by the Legislature by *Act passed April* 20, 1887, *Laws of Delaware, Volume* 18, *page* 352, *etc.*, which is given the power over the streets theretofore possessed by the City.

The Board of Park Commissioners was created by the *Act passed at Dover, March* 13, 1883, *Laws of Delaware, vol.* 17; *page* 404, wherein it appears that the powers of the City over the parks exercised through the said Board of Park Commissioners are practically the same as the powers of the City over the streets exercised through the Board of the Street and Sewer Department, and therefore the liabilities which arise from the exercise of this power, are not only analogous, but practically identical.

The Legislature in the Act creating the Board of Park Commissioners did not impose a mandatory or arbitrary burden upon the City of Wilmington as an agency or a division of the State in the exercise of its governmental functions, but conferred a privilege upon the City as a municipal corporation which it was at

liberty to exercise or not. If it accepted it then the City became liable for the exercise of the power therein conferred and this liability in this State is an implied liability and requires no statute to create it.

Barnes vs. Dist. of Col. 91 U. S. 540 (443); Dillon on Mun. Cor., Sec. 1018; Dillon on Mun. Cor. 763; Weisenberg vs. Town of Winneconne, 56 Wis. 667, 669; Shearman & Redfield on Neg. 281; Winn vs. Rutland 52 Vt. 478, Greenwood vs. Town of Westport, 60 Fed. 560, 564; Jones on Negligence of Municipal Corp. Sec, 25.

## II.

This duty of the Board of Park Commissioners is not governmental, requiring governmental exemption from liability in its exercise but is a corporate duty, from which arises a corporate liability for want of reasonable care in its discharge.

Williams on Municipal Liability for Torts, Section 5; Jones on Negligence of Municipal Corporations, Sec. 27, etc.

Provisions for local convenience for citizens like water, light, public grounds and the like, are manifestly matters which are not provided for by municipal corporations in their political or governmental capacity but in their quasi private capacity in which they act for the benefit of their corporators exclusively and for the exercise of which they are liable.

Cooley on Taxation, second edition 688; McQuillin on Municipal Ordinances, page 804 (Sec. 515); Am. Eng. Ency. of Law, 2nd edition, Vol. 21, page 1071; Bernard Mahon, respondent, vs. The Mayor etc. of the City of New York, 10 N. Y. Misc. 664 (N. Y. Common Pleas, Jan. 1895); Kleofort vs. City of Minn., 93 Minn. 118; Thompson on Negligence, Vol. 5, page 306-7-8; Dillon on Municipal Corporations, Sec. 72 and note to Section 73.

In the case of O'Rourke vs. Mayor etc. of the City of New York, the Supreme Court of New York Appellate Division decided in May 1897, found in American Negligence Reports, Vol. 3, page 249, the Judge, in delivering the opinion says:

"We may assume for the purpose of this appeal that it was the duty of the City to maintain the walks in Central Park in a

reasonably safe condition for the use of people who had occasion to go there for business or pleasure. The duty of the City of New York as to the walks in Central Park is one of reasonable care, and the care to be exercised is to be commensurate with the danger to be apprehended."

## III.

The *Board* of *Park Commissioners is simply a sub-division or agency of the municipal corporation of Wilmington* and *for its acts* with *relation to the duties imposed upon it the City is responsible.*

*Barnes vs. District of Columbia,* 91 *U. S.* 440; *District of Columbia vs. Woodbury,* 136 *U. S.* 450; *Howard vs. Brooklyn,* 30 *App. Div. N. Y.* 217; *Hergott vs. City of New York,* 96 *N. Y.* 264; *Edgerton vs. Mayor, etc.,* 27 *Fed. Rep. page* 230-232.

It is *respectfully submitted* also *that the uniform decisions in our Court holding* the *city responsible* for the acts of the *Street and Sewer Department,* which is a *Board similar to the Board of Park Commissioners* is *conclusive* as to the point we are now considering, the *responsibility of the city* for the *acts of the Board of Park Commissioners,* and that it is *simply* an *agency or department* of the *municipal corporation.*

*From the foregoing review of the decisions and the law governing this case, we respectfully submit the great weight of reason and principle and the weight of authority, are in favor of upholding the liability of the city for the acts complained of in the declaration filed in this case; that the decisions of this State in analogous cases and especially the principles of law which underlie those decisions require that the liability of the city under the state of facts alleged in this declaration, shall be upheld; and that any other decision would be in conflict with those principles and would lead to embarrassment, confusion and a practical denial of justice; that therefore the demurrer filed in this cause should be overruled.*

*Per Curiam:* Demurrer overruled.