MICHAEL KELLEY *v.* THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware.

(MARCH 27, 1931.)

RICE, J., sitting.

*James R. Morford* (of Marvel, Morford, Ward and Logan) for plaintiff.

*Harry K. Hoch* and *Thomas M. Keith* for defendant.

Superior Court for New Castle County, March Term, 1931.

Trespass, No. 92, January Term, 1931.

Other facts appear in the opinion of the Court.

RICE, J., in directing the jury to find a verdict for the defendant, said:

At the conclusion of the plaintiff's case, the defendant moved for a non-suit on the ground that the City of Wilmington was not liable for an assault and battery committed by a special officer appointed by the Board of Park Commissioners, the assault and battery having been committed in an attempt by the officer to enforce a regulation of that Board. The Court at the time of the motion did not have the time or opportunity to consider the question in the manner and with the care which its importance justified. By reason of that fact, the non-suit was refused and the suggestion made that the defendant produce such evidence as it had to present and that the question might again be raised on a prayer for binding instructions at the conclusion of the testimony.

The defendant now prays that the Court instruct the jury to find a verdict for the defendant for the same reasons urged in the motion for a non-suit.

In the Act of the Legislature creating the Board of Park Commissioners, being *Chapter* 204, *Vol.* 17, *Laws of Delaware, p.* 404, it is provided in *Section* 6 that:

"The Board of Commissioners shall have power to appoint such special policemen as they may deem necessary, who shall have the same power and authority as are exercised by the policemen of the City of Wilmington and the constables of New Castle County."

In *Section* 7, it is provided that:

"The said board of commissioners shall have power to make all needful rules and regulations for the government and use of any park under their control not inconsistent with the laws and constitution of the United States or of the State of Delaware or with the ordinances of the City of Wilmington; and any person who shall violate any of said rules and regulations shall be guilty of a misdemeanor and shall pay such fine as may be prescribed by said board of commissioners, not to exceed ten dollars for each and every violation thereof, to be recovered before the mayor of the said city, or any

justice of the peace in New Castle County, as debts of that amount are recoverable, which fines shall be paid into the city treasury. * * *"

The Board of Park Commissioners' of the City of Wilmington under authority of the statutory provision found in *Section* 7, among the other regulations, passed the following:

"The Board of Park Commissioners of the City of Wilmington, under their power to make all needful rules and regulations for the government of any parks under their control, have made the following. Persons violating these rules are liable to penalties in amount not exceeding $10 for each offense. * * *

"Sec. 7. No person shall enter upon or loiter about any prohibited place within the Park, or violate any special notice or injunction, or loiter in any place after having been directed by an officer to move on, or refuse to obey any reasonable request of any park guard."

The Board of Park Commissioners appointed one George Lukens as a park guard and special officer and he was directed, on the 27th day of November, 1930, to prevent persons from walking over a suspension bridge which crossed the Brandywine Creek from the southerly to the northerly bank of said stream, the suspension bridge at the time being under repairs and without a walk, except a twelve-inch board used by workmen while engaged in making the repairs to such bridge.

At each end of the bridge a gate had been erected and secured with a chain and lock. On each gate there was hung a sign having printed thereon the following words: "No trespassing under the penalty of the law."

The plaintiff, on the day in question, climbed over the gate at the southerly end of the bridge and while proceeding across the bridge on the plank walk, Lukens called to him to stop and go back. At this point there is a conflict between the evidence on the part of the plaintiff and that produced by the defendant, the plaintiff claiming that he turned around and started back in the direction from which he had come, and the defendant contending that the

plaintiff proceeded to cross the bridge, whereupon he was arrested by the special officer but broke away from him and started back.

The evidence shows that when the plaintiff was from fourteen to sixteen feet away from the officer, the officer shot at the plaintiff twice, the bullet from the second shot hitting the plaintiff in the heel.

It is the opinion of the Court that the Park Board, under the authority vested in it by the Act of the Legislature, had the power and authority to appoint a special officer having the same power and authorities as are exercised by the policemen of the City of Wilmington; that under that Act the Board of Park Commissioners of the City of Wilmington had authority to pass *Rule* 7 and that the same was a reasonable rule. Also, the action of the Park Commissioners through their agent in placing a guard or special officer at the bridge to prevent people from going over the bridge in its then condition was a reasonable act in compliance with *Rule* 7.

We now arrive at the important question in the case: that is, the liability of the City for the act of the special officer in shooting the plaintiff.

The question is one of first impression in this state, as the two cases cited as authority for the claim of the plaintiff, that the city is liable to the plaintiff for the act of the special officer (*Pennell's Adm'r v. Wilmington,* 7 *Penn.* 229, 78 *A.* 915; *Brown v. Mayor & Council of Wilmington,* 4 *Boyce* 493, 90 *A.* 44) are not decisive of the present question.

It seems to be the general rule in cases similar to the present one that the city is not liable for the act of a police officer in performing a governmental act not performed in a corporate capacity. The general rule is stated in 43 *Corpus Juris, p.* 964, as follows:

"When, by the actions of the State, a municipal corporation is charged with the preservation of the peace, and empowered to appoint police boards and other agencies to that end, the corporation *pro tanto* is charged with governmental functions in the public interest and for public purposes, and in the exercise of its powers and duties in respect of the enactment and enforcement of police regulations it is entitled to the same immunity as the sovereign granting the power unless such liability is expressly declared by the sovereign. The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the public. A city is not liable therefore for the acts of its officers in attempting to enforce such regulations even when the regulations are void."

See, also, 4 *Dillon* on *Municipal Corporations,* § 1656.

█ It is true that there are certain exceptions to this general rule, one being that the city is liable for the negligent acts of its servants in constructing or repairing public streets and in this state this exception has been extended to certain defects in public parks. *Pennell's Adm'r. v. City of Wilmington,* 7 *Penn.* 229, 78 *A.* 915.

█ The Court believes the law applicable to the present case is correctly stated in the well-considered case of *Dargan v. Mayor, etc., of Mobile,* 31 *Ala.* 469, 70 *Am. Dec.* 505. In that case a slave was negligently killed by an officer of the city guard in attempting to arrest him for the violation of a city ordinance. The owner of such slave brought suit against the city and in considering the rights of the parties the Court said:

"The question here is not as to the liability of a corporation for the omission to discharge its duty; nor for the performance of an unlawful act by it or its authority; nor for the exercise of a power not delegated; nor for the negligence of its agents, or officers, in the performance of an act for the private benefit of the corporation, or done under the immediate supervision of the corporation. The question of this case is, whether a municipal or public corporation is liable in damages, for an injury resulting from the careless or negligent official conduct of one of its officers, in whose selection there was no negligence, and whose employment was the lawful and necessary means of executing a governmental power vested in it for the public benefit, and whose acts are not done under the supervision of the corporation. This question we decide in the negative.

"Because the corporation is, as to the passage of the ordinances and the appointment of the officer described in the pleadings, a government, exercising political power, it is irresponsible for the official misconduct alleged, upon the same principle which generally protects governments and public officers from liability for the misfeasances and malfeasances of persons necessarily employed under them in the public service.—*Story on Agency*, §§ 319, 319*a*, 319*b*, 320, 321; *Dunlap's Paley's Agency*, 376. Municipal corporations, *quoad hoc*, stand upon the same foundation with public officers, counties, townships, and other *quasi* corporations, charged with some public duty, or invested with some portion of the authority of the government, where the employment of officers is necessary and lawful."

This seems to be the law throughout the United States with few authorities holding otherwise. With respect to the two Delaware cases cited by the plaintiff, it appears that in *Pennell's Adm'r. v. Wilmington, supra,* the Court overruled a demurrer of the declaration, in which it was charged that the defendant corporation having control of the parks of the city of Wilmington, by its neglect suffered and allowed Delamore Park to be and remain in a defective, unsafe and dangerous condition by reason of a certain comfort station opened for public use therein not having the seat thereof provided with suitable and safe appliances, and that plaintiff's intestate, an infant under five years of age, while lawfully using the toilet fell through or over the seat into the well and by reason thereof was injured.

It is the opinion of the Court that this case is entirely different from the present one in that it did not involve an act of a police officer and may be considered as falling within the exception to the general rule; the exception being that the city may be liable for the negligent acts of its agents or servants with respect to the maintenance of public streets.

In *Brown v. Mayor and City of Wilmington,* 4 *Boyce* 493, 90 *A.* 44, the present question was not raised and, therefore, not passed upon by the Court.

For the reasons stated, it is my opinion that a nonsuit should have been granted at the time the motion was

made and the prayer of the defendant requesting that the jury be instructed to find a verdict in favor of the defendant is, therefore, granted.