HUMMER *v.* SCHOOL CITY OF HARTFORD CITY, INDIANA.

[No. 18,358. Filed June 8, 1953. Rehearing denied September 15, 1953. Transfer denied October 17, 1953.]

*Peterson & Ervin,* of Hartford City, and *Albert A. Abromson,* of Portland, for appellant.

*Warner, Clark & Warner,* of Muncie, for appellee.

ACHOR, J.—This is an action filed by appellant against appellee for damages for personal injuries allegedly sustained by appellant while a spectator at a basketball game conducted by appellee.

Appellant's amended complaint was in two paragraphs. Both paragraphs contained the following allegations relative to such basketball game: That the defendant scheduled said basketball game between the team representing the schools of Hartford City and the team representing the schools of the City of Portland, Indiana, to be held in the gymnasium in the City of Hartford City, Indiana, and so advertised and publicized such game; that the defendant then proceeded to stage, manage and conduct said basketball game on December 15, 1948 for the alleged purpose of furnishing entertainment to the general public in exchange for a monetary consideration and for the further purpose of making pecuniary profit; that appellant was a paid spectator; that the appellee was negligent in permitting the school premises to be in an unsafe condition; that it failed to properly supervise the crowd upon said premises while attending the game, and that appellant was injured as the proximate result of said negligence. Neither paragraph of complaint alleged service of notice upon appellee as provided in §48-8001, Burns' 1950 Replacement (ch. 80, Acts of 1935, §1, pp. 235, 236).

In addition to the above allegations, the second paragraph of complaint contained the following allegation:

"11. Plaintiff further alleges that at all times herein mentioned there was in full force and effect a certain policy and contract of insurance between the defendant and the Continental Casualty Company, being Policy No. C. I. 4668312, dated February 11, 1948, under the terms of which said Continental Casualty Company agreed and was and is fully bound to pay on behalf of the defendant all sums which the defendant should become obligated to pay by reason of the liability imposed upon it by law for damages because of bodily injury sustained by any person or persons and caused by accident. That a copy of said policy and contract of insurance is attached hereto, marked 'Exhibit A', incorporated herewith and made a part hereof. Plaintiff further avers that said Continental Casualty Company is fully solvent and amply able to pay and satisfy any judgment obtained herein against the defendant, and that said Continental Casualty Company is defending and will continue to defend this action on behalf of the defendant."

Appellee filed a motion to strike said rhetorical paragraph 11 as being irrelevant matter. The motion was sustained. Thereafter appellee filed a demurrer for want of facts to each of said paragraphs of amended complaint, which demurrer was sustained. Appellant refused to plead further and judgment was entered that appellant take nothing by his complaint and that appellee recover his costs.

The error assigned is the sustaining of the demurrer and the sustaining of the motion to strike. The following questions were placed in issue by the demurrer: (1) Is the appellee a "municipal corporation" within the meaning of §48-8001, *supra,* and, if so, did failure to allege such notice of the occurrence of the injury make the complaint insufficient on demurrer? (2) Ad-

mitting *arguendo* the fact of negligence, was appellee school corporation liable in damages for injuries suffered by appellant as a result of the negligence of appellee's officers and servants in the maintenance of the school premises and in the management of the crowd, or was the school corporation, a political subdivision of the state, immune from such liability? Furthermore, by its motion to strike out rhetorical paragraph 11 of the second paragraph of amended complaint, appellee raised the following question of law: (3) Was it a material fact, which appellant is entitled to allege, as precluding immunity of appellee as a political subdivision of the State of Indiana from tort liability, that appellee carried a policy of insurance of the type contemplated by §39-1819, Burns' 1952 Replacement (ch. 52, Acts of 1941, §2, p. 146)?

Upon the question of appellant's failure to allege service of notice upon appellee, earlier cases in this and the Supreme Court have held that the giving of such notice to civil cities must be alleged in the complaint or the complaint would be held insufficient on demurrer. *City of Indianapolis* v. *Uland* (1937), 212 Ind. 616, 10 N. E. 2d 907; *Sherfey* v. *City of Brazil* (1938), 213 Ind. 493, 13 N. E. 2d 568; *City of Rushville* v. *Morrow* (1913), 54 Ind. App. 538, 101 N. E. 659. However, the Supreme Court of Indiana, in a more recent decision, has held that a cause of action is sufficient against demurrer without alleging the fact of such statutory notice, the reason given being stated as follows:

". . . The liability of the city is not created by any statute, it arises out of the failure of the city to perform a duty.

"Our notice statutes do not purport to set up a condition precedent to the liability of the city, but merely establish a procedural step which was

necessary to the remedy of bringing an action to enforce the liability. . . . The notice does not affect the legal or moral obligation of the city to pay for the damages caused by its negligence. Its only purpose is to enable the city to make a prompt investigation as to its liability. The notice does not affect the right, it affects only a remedy of the injured—the remedy of instituting and maintaining an action for the collection of the damages." *Aaron* v. *City of Tipton* (1941), 218 Ind. 227, 235, 236, 32 N. E. 2d 88. See also *Lynch* v. *City of Terre Haute* (1952), 123 Ind. App. 282, 109 N. E. 2d 437.

It is true that the generic term "municipal corporation" has been applied to both civil cities and school cities. §28-2402, Burns' 1948 Replacement (ch. 1, Acts of 1865, §4, p. 3). However, it is also true that civil cities, which are voluntary corporations of the state, and school cities, counties and townships, which are involuntary subdivisions of the state, are entirely distinct corporations possessing many divergent characteristics, with respect to suits filed by and against such cities. *Agar* v. *Pagin* (1906), 39 Ind. App. 567, 79 N. E. 379; *Teeple* v. *State, ex rel.* (1908), 171 Ind. 268, 86 N. E. 49; *Freel* v. *The School City of Crawfordsville* (1895), 142 Ind. 27, 28, 41 N. E. 312.

Appellant urges further that the scope of the notice statute, as expressly written in both the title thereto and the body thereof, is clearly limited to civil cities and towns. The title of the act is as follows (§48-8001, *supra,* ch. 80, Acts 1935, *supra*) :

"AN ACT concerning the service of notice upon *cities and towns* before bringing actions against them for damages for loss of or injury to property, or for injury to persons, or for wrongful death, resulting from any nuisance, negligence or wilfulness, in certain respects, of such cities and towns, and repealing all laws in conflict therewith." (Our italics.)

It is a fact that the term "cities and towns" employed in the title of the act, by common usage, generally refers to civil cities and towns. Words and Phrases: Vol. 7, *Cities and Towns*, p. 246; Vol. 7, *City*, p. 295; Vol. 42, *Town*, p. 164; *The City of Indianapolis* v. *Higgins* (1895), 141 Ind. 1, 10, 40 N. E. 671. The fact that such usage was contemplated by the Legislature is supported by the body of said act, which expressly provides that service shall be ". . . upon either the *mayor* or *clerk* of any such city or a member of the board of trustees of any such town, . . ." (Our italics.) The "mayor" and "clerk" are officers of civil cities only, and not of school cities. The officers of the boards of school cities are *president, secretary* and *treasurer.* §28-1605, Burns' 1948 Replacement. Every precedent of our law would support an intention to provide for service only upon the officials of the body sought to be held liable in suit.

To say the least, the above facts raise serious doubt as to the construction of the notice statute (§48-8001, *supra,* ch. 80, Acts of 1935, *supra*). Rules of statutory construction require that this doubt must be resolved against the application of said act to school cities, inasmuch as the act is in derogation of the common law and must, therefore, be strictly construed. *City of Indianapolis* v. *Willis, Administrator* (1935), 208 Ind. 607, 194 N. E. 343; *Sherfey* v. *City of Brazil, supra; Aaron* v. *City of Tipton, supra; City of Gary* v. *McNulty* (1935), 99 Ind. App. 641, 194 N. E. 193. Similar statutes of other states requiring notice as a condition to recovery have been held to apply only to civil cities, villages and burroughs and not to school districts. *Bohrer* v. *Village of Inver Grove* (1926), 166 Minn. 336, 207 N. W. 721; *Ferris* v. *Board of Education* (1899), 122 Mich. 315, 81 N. W. 98.

Notwithstanding strong arguments in favor of the service of notice on all municipal corporations, we conclude that the statute, as written, is not applicable to school cities and towns, and that appellant's complaint was not insufficient on demurrer because of his failure to allege service of notice pursuant thereto.

We next consider the major issue of the liability of governmental immunity on the part of appellee school corporation. The general rule upon this issue is stated as follows in 160 ALR at page 38: ". . . In the absence of statutory liability, school districts, school boards, or similar school agencies or authorities are not liable in tort for injuries or damage caused by negligence in the performance of governmental functions."

There is marked conflict in the reported cases as to whether the staging of an athletic contest under the circumstances alleged is a governmental or a proprietary function, 160 ALR, p. 192; *Hoffman* v. *Scranton School District* (1949), 67 Pa. 301, 41 Mun. Law Rep. 21; *Watson* v. *School District of Bay City* (1949), 324 Mich. 1, 36 N. W. 2d 195, and we do not decide that question. However, admitting *arguendo* that a proprietary function might be proved under the facts alleged, we consider appellant's contention that our courts should apply the same rule regarding governmental immunity to school cities which we have applied to civil cities. In this regard, our courts have distinguished between governmental functions and proprietary functions and have held civil cities liable in damages for torts occurring in the performance of their proprietary functions. *City of Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 177 N. E. 249; *Sherfey* v. *City of Brazil, supra.* Appellant contends that by this analogy, there is precedent for holding

school cities responsible for their torts in the perform-
ance of proprietary functions and that there is no log-
ical reason for applying different rules as to the
liability of school cities on the one hand and civil cities
on the other, and appellant urges the adoption of such
a rule by the courts of this state is impelled by the fact
that school cities now engage in many proprietary func-
tions not contemplated at the writing of our Constitu-
tion, by our statutes, or by the decisions of our courts
governing our school cities. Appellant's position is sup-
ported by the following cases: *Douglas* v. *Hollis* (1934),
86 N. H. 578, 172 A. 433; *Hoffman* v. *Scranton School
District, supra; Watson* v. *School District of Bay City,
supra.*

However, the great weight of authority in this coun-
try supports the rule of non-liability of school corpora-
tions for torts committed by their officers and
agents on the grounds of governmental immu-
nity. 47 Am. Jur. 334, 63 CJS, 87. Generally,
the reason for this immunity has been stated as follows:

". . . They act, in connection with public educa-
tion, as agents or instrumentalities of the state in
the performance of a governmental function for
which the state, acting through the legislature, is
primarily responsible, and consequently they par-
take of the state's sovereignty with respect to tort
liability.

"With respect to school districts, school boards,
or other agencies or authorities created exclusively
for school purposes, a large number of courts have
observed that they are mere agencies or instru-
mentalities of the state established for the sole
purpose of administering the state system of pub-
lic education, for which they receive no private or
corporate benefit, and that in this respect they
occupy a status similar to that of counties, towns,
townships, and road districts; and several courts
have pointed out that, as to tort liability, such
agencies or authorities occupy a status different

from that of municipal corporations generally, which ordinarily have a dual character and which may exercise proprietary as well as governmental functions." 160 ALR, 54 and 55.

Other reasons given for the rule are that schools ". . . have no means to pay damages for tort claims, that they are not given power to raise money therefor, and that all funds placed under their control are appropriated by law to strictly school purposes, and cannot be diverted by them. . . ." 160 ALR, 55.

It has also been supported on the basis of public policy that, ". . . certain things, such as public education, are for the benefit of all, and that the welfare of the few must be sacrificed to the public interest. . . . And some courts have reasoned that a school board, such as a board of education, has no authority to commit a tort, that in committing a tort it does not represent the school district, and that for its negligence or tort in any form the board cannot make the district liable." 160 ALR, 57.

Regardless of the rule adopted in other states, the general rule in this state regarding non-liability of school corporations for the negligence of their officers and agents, seems to have been firmly established in the case of *Freel* v. *The School City of Crawfordsville, supra*. In that case a workman was injured while making repairs on a schoolhouse. The action was to recover damages for his injuries because of the alleged negligence of the school city. The court denied liability, stating that,

"School corporations in this State are a part of the educational system of the State, established in compliance with article 8 of the constitution, sections 182, 187 R.S. 1881 (sections 182, 187, R.S. 1894), which makes it the duty of the Legislature 'to provide by law for a general and uniform system

of common schools, where tuition shall be without charge and equally open to all.' They are involuntary corporations, organized not for the purpose of profit or gain but solely for the public benefit, and have only such limited powers as were deemed necessary for that purpose. Such corporations are but the agents of the State, for the sole purpose of administering the State system of public education. . . .

". . . School corporations, therefore, are governed by the same law in respect to their liability to individuals for the negligence of their officers or agents as are counties and townships.

"It is well established that where subdivisions of the State are organized solely for a public purpose, by a general law, that no action lies against them for an injury received by a person on account of the negligence of the officers of such subdivision, unless a right of action is expressly given by statute. Such subdivisions then, as counties, townships, and school corporations, are instrumentalities of government, and exercise authority given by the State, and are no more liable for the acts or omissions of their officers than the State." (Cases cited.)

This rule was subsequently affirmed in the cases of *Forrester* v. *Somerlott* (1928), 88 Ind. App. 61, 163 N. E. 121, and *Yelch* v. *Trustees of Purdue University* (1936), 210 Ind. 535, 538, 1 N. E. 2d 1009.

Appellant makes an issue of the fact that the *Freel* case, *supra,* involved a governmental and not a proprietary function, and therefore was not decisive as to the liability of a school city in the latter circumstance. Appellant urges, as heretofore expressed, that the expanding character of the functions performed by school corporations at the present day requires that the rule of governmental immunity be *liberalized* with regard to the proprietary activities of such school corporations. However, the general principle announced in the *Freel* case has been accepted as the controlling rule of

law in this state for nearly 60 years. It conforms with the rule generally adopted by the courts of other states. 160 ALR 55, *supra;* 78 CJS 1321; 47 Am. Jur. 334-337, *supra.* Furthermore, the general principle of governmental immunity from tort liability has been uniformly applied by our courts in a long line of cases affecting counties and townships. See cases cited in 4 Callahan's Indiana Digest, *Counties,* 221, and 14 Callahan's Indiana Digest, *Townships,* 175.

We are aware of a modern tendency for many school corporations to engage in commercial enterprises and proprietary functions only remotely related to the public education. There is reason why, under such circumstances, school officials and perhaps school corporations themselves should be held liable for their torts in connection with such activities. However, in view of the formidable precedent established by the foregoing authorities, which have established a uniform rule of governmental immunity from all tort liability with respect to all involuntary units of government, including school cities, counties and townships, we are persuaded that the modification of so firmly an established principle with its broad consequences in public affairs presents a matter for general restatement of public policy by legislative enactment. Such a restatement would not be possible in this case because of the limited issue involved. Furthermore, it would constitute judicial legislation, which would not be proper under our constitutional division of governmental authority.

We now consider the further major question for consideration, whether or not the Legislature by the enactment of §39-1819, *supra,* made it possible for the appellee school corporation to waive its governmental immunity and, if so, whether or

not appellant was entitled to allege and prove the fact of such insurance as constituting waiver. The rule is well established that governmental immunity may be abrogated or modified by legislative enactment unless prohibited by the Constitution, 160 ALR 85, and that the Legislature may establish circumstances under which school cities may waive the defense of immunity. 160 ALR 83. The rule is also well established that waiver must be affirmatively pleaded. 56 Am. Jur. 118.

The statute before us (§39-1819, *supra*) is as follows:

"The state, or any municipal corporation thereof, is hereby empowered to purchase policies of insurance insuring the officers, appointees, agents and employees of the state or municipal corporation against loss or damage because of the liability imposed by law upon such officers, appointees, agents and employees for loss or damage resulting from bodily injury to, or death of, or property damage sustained by, any person or persons, caused by accident and arising out of the ownership, maintenance, hire, or use of any motor vehicle owned by the state or such municipal corporation, and any real or other personal property whatsoever, owned, hired, or used by the state or such municipal corporation, . . . In no event shall the state or any municipal corporation thereof, be liable, in any case, in any amount in excess of the maximum amount of valid insurance in full force and effect and covering the particular motor vehicle or particular real or personal property involved in the accident causing such loss or damage: . . . No such policy of insurance shall be purchased by or issued or delivered to the state or to any municipal corporation . . . unless there shall be contained within such policy a provision that if there arises or may arise a claim, suit or cause of action in relation thereto, such insurance carrier will not set up, as a defense, the immunity of the state or of such municipal corporation, but such insurance carrier shall be permitted to plead and interpose every other defense that would be available to the insured

if such insured were a natural person or a private corporation. . . ."

This being a case of first impression in our state requiring construction of the above statute, we have searched the statutes and decisions of other states for guiding precedents upon this issue. As heretofore suggested, we find that many states have enacted laws which have made school corporations and similar governmental agencies liable in tort within the limitation of their particular statutes. Recovery through the medium of insurance because of the torts of school officials and employees has been accomplished by various methods. Several states have enacted laws which (1) have affirmatively created a primary liability on the part of governmental agencies such as school corporations, as to certain designated torts, and have authorized the purchase of insurance to protect such agencies and persons injured in event of loss related thereto. Other states, without creating a primary liability on the part of such agency, have accomplished a similar result through statutes which (2) have empowered or required the agency to procure liability or indemnity insurance and by further providing that (a) the action shall be brought by persons suffering injury or loss directly against the insurance carrier, *Earl W. Baker Co.* v. *Lagaly* (1944), (Okla.) (CCA 10th) 144 F. 2d 344, 154 ALR 1098, or (b) by expressly providing "that the liability of the insurer shall be determined by *judgment* obtained by the injured person" against the school city. *Taylor* v. *Knox County Bd. of Edu.* (1942), 292 Ky. 767, 167 S. W. 2d 700, 145 ALR 1333. In each of the latter instances (2a and 2b), the amount of the judgment was limited to the amount specified in the contract of insurance and recovery thereof was restricted to the insurance carrier. Finally, (c) it has

been held in one jurisdiction that where statutes merely empower school boards to employ school bus drivers and require them to make bond for the faithful performance of their duties, and statutes further authorize such school boards to take out liability insurance covering the operation of such school busses, and a child is injured as a result of the negligence of a driver, judgment might be taken against the school city (without any express authority), provided it is so limited that it would be satisfied only out of the insurance. *Rogers* v. *Butler* (1936), 170 Tenn. 125, 92 S. W. 2d 414; *Taylor* v. *Cobble* (1945), 28 Tenn. App. 167, 187 S. W. 2d 648.

Significant to the consideration of this case is the fact that the insurance policy in issue named the School City of Hartford City as the sole "insured" and that said school city was made the sole defendant in this case, although our statute makes no provision for the purchase of insurance insuring municipal corporations themselves. To the contrary, by express terms, it merely empowered the "purchase of policies of insurance insuring the *officers, appointees, agents* and *employees* of the . . . municipal corporation . . ." §39-1819, *supra.*

Furthermore, by the clear terms of the statute (§39-1819, *supra*), it only presumes to authorize the purchase of insurance insuring said officers, etc., "against loss or damage *because of the liability imposed by law* upon such officers, . . ." And, as heretofore discussed, in this state there is no "liability imposed by law" upon school corporations as such because of the negligence of school officers and employees. *Freel* v. *The School City of Crawfordsville, supra.* The existing "liability imposed by law upon such officers" of school corporations is expressed in the following reported cases of our courts: In the case of *Adams* v.

*Schneider et al.* (1919), 71 Ind. App. 249, 124, N. E. 718, this court held that members of a school board may be held *personally* liable for negligence in the performance of their ministerial acts in connection with a "Field Day (athletic) Exhibition," as distinguished from their discretionary acts. Also, in an earlier decision our courts held that a township trustee was personally liable for an assault and battery committed by him in connection with the eviction of a teacher from a school building. *White* v. *Kellogg et al.* (1889), 119 Ind. 320, 21 N. E. 901.

This court, in the later case of *Medsker* v. *Etchison* (1936), 101 Ind. App. 369, 371, 372, 373, 374, 199 N. E. 429, substantially limited the precedent of the above cases by the following statements:

". . . Generally speaking, school officers acting within the scope of their duty are only responsible individually for the injuries resulting from corrupt motives and not from mistake of law or judgment. . . .

. . . .

"The school board as a unit and not as individuals accepted the report of the superintendent. They had delegated generally to this man the conduct of the schools. . . . In the absence of a showing that they directed his specific act or personally cooperated therein they cannot be held personally liable. . . .

". . . We do not say by this that even if these things had been done that there could be a recovery here, but we do say that these facts and possibly others must be present before they could be guilty of negligence. Even though they should be guilty of negligence, whether or not the law provides a remedy is still another question and not before us here. . . .

. . . .

"The board here was not acting as individuals but as an official body and for their acts as such

there is no liability or at least there is no remedy provided by law whereby it may be enforced. . . ."

Therefore, our insurance statute (§39-1819, *supra*), in the light of the above cases, does not, in addition to providing for indemnity insurance, also affirmatively (1) create a primary liability on the part of the assured, or (2a) provide for the filing of suit directly against the insurer, or (2b) provide that the measure of liability can be determined by a limited judgment taken against the assured. The statute neither modifies nor expressly provides a remedy which waives or circumvents the immunity of the municipal corporation which insures itself against liability.

We conclude, therefore, that waiver of governmental immunity by a *school city* must be read into our statute, if at all, (2c) by implication, as was done by the Supreme Court of Tennessee.

Appellant urges the adoption of the Tennessee rule on the grounds (1) that by the carrying of insurance a major reason for governmental immunity is obviated, namely, that there are no funds available out of which to pay such losses. This is the ground upon which the Tennessee court based its opinion. However, as heretofore indicated in this opinion, the reason for governmental immunity from liability for torts rests upon a much broader base than the mere absence of funds with which to pay such losses. This immunity is a fundamental and long established rule of our common law. *Freel* v. *The School City of Crawfordsville, supra.*

Appellant urges further in support of statutory waiver of governmental immunity by implication (2) that there would be no purpose in authorizing the pur-

chase of insurance by school corporations if no liability for loss or damage were made to exist against such school cities and (3) that the following limitation in the statute would be a complete anomoly. The limitation referred to is as follows: ". . . In no event shall the . . . municipal corporation . . . be liable, in any case, . . . in excess of the maximum amount of valid insurance . . ." §39-1819, *supra*.

However, as heretofore stated, *personal* liability has been imposed upon the officials of school corporations, in the cases of *Adams* v. *Schneider et al., supra,* and *White* v. *Kellogg et al., supra,* as restricted in the case of *Medsker* v. *Etchison, supra.* These cases would seem to justify the procurement of insurance insuring its officials, etc., against the problematical "liability imposed by law" as provided in our statute, §39-1919, *supra*. In this particular the statute has logical application to school cities as municipal corporations and must be so construed.

In regard to appellant's third contention, which refers to the liability of municipal corporations as distinguished from that of the officers and employees thereof, it must be observed first that this sentence of the statute is entirely negative and restrictive and not creative or permissive. Also, consideration must be given to the fact that this is a general statute which applies to all municipal corporations; that civil cities have been held liable for torts related to their proprietary functions. We do not so hold but merely observe that the Legislature may have intended to restrict the liability of such civil cities in event they elected to purchase insurance as authorized by the statute.

In any event, as heretofore stated, it is an established rule of statutory construction that statutes which

would modify so fundamental a rule of the ▮ common law must be clear and concise in their expression of such an intent, that intendment can not be supported by mere implication, and that if ambiguous, the statute must be construed against the modification of the rule. Consistent with this rule of statutory construction, numerous courts have held that statutes similar to our own, and the procurement of insurance as therein authorized, have not had the effect of waiving the immunity of a governmental unit so as to permit judgment to be taken against it.

In the case of *Kesman* v. *Fallowfield Twp. School Dist.* (1942), 345 Pa. 457, 29 A. 2d 17, the court held that the governmental immunity of a school board from liability in respect of injury to pupils riding in school busses was not, in the absence of statutory regulation, affected or waived by the fact that the board carried liability insurance.

In the case of *Texas Prison Bd.* v. *Cabeen* (1942), (Tex. Civ. App.) 159 S. W. 2d 523, it was held that the Legislature did not waive the state's immunity from liability for torts committed by convicts in the penitentiary by the adoption of a statute giving the state prison board power to insure the officers and employees of the prison system against liability to third persons arising out of the system's use of motor vehicles for purposes legitimately connected with the system, *the statute not creating a liability* against the state and its employees with power in the prison system to protect its employees from such liability, but merely enabling the procuring of insurance for protection against an existing liability. See 145 ALR 1338, *supra*.

In the case of *Ayers* v. *Hartford Accident & Indemnity Co.* (1939), (Ga. CCA), 106 F. 2d 958, 960, 961, suit was against the insurance carrier rather than the

school board. However, in discussing the possibility of judgment being taken first against the school board, the court stated:

> " 'A county is not liable to suit for any cause of action unless made so by statute.' Millwood v. De-Kalb County, 106 Ga. 743, 32 S. E. 577. There being no liability imposed by law on the Board for this sad tragedy, there can be no loss to the Board to be paid by the Company. It is immaterial whether the promise to pay such loss runs to the Board only or also to the person injured. If there is no liability on the Board or on the County which acts through it, 'by reason of the ownership, maintenance or legal use of the automobile,' there is no promise to pay anyone.
>
> . . . .
>
> "Another position taken is that the condition (in the policy) requiring a judgment against the Board before suit is legally impossible of performance and void. The suggestion if sound does not help, because there is no promise to pay where the law imposes no liability on the Board."

Also, in the case of *Boice* v. *Board of Education* (1931), 111 W. Va. 95, 160 S. E. 566, the court denied an injunction to prevent the school board from setting up the defense of immunity. The court in that case held that the fact that a board of education procured and paid the premiums on an indemnity policy covering the operation of its school busses, under the terms of which the insurer was not liable directly to a claimant until after recovery of a judgment against the insured, has been held (in the absence of a statute authorizing such procedure) not to affect the immunity of the board from liability for the negligent operation of one of the busses, and not to entitle an injured pupil to a decree in equity enjoining the board from setting up the defense of immunity, and permitting a recovery

against the insurer, since the board could not by its own act change its status as a governmental agency.

Also, in a discussion of the issue now before us, the Supreme Court of West Virginia, in the case of *Utz* v. *Board* (1944), 126 W. Va. 823, 826, 827, 30 S. E. 2d 342, stated:

> "The act (ch. 60, Acts of 1935, Code 18-5-13) in question reads as follows:
>
> " 'The boards, subject to the provisions of this chapter and the rules and regulations of the state board, have authority: . . .
>
> '(7)    to provide at public expense for insurance against the negligence of the drivers of school busses, trucks, or other vehicles operated by the board; and if the transportation of pupils be let out to contract, then the contract therefor shall provide that if the contractor shall carry insurance against negligence in such an amount as the board shall specify.'
>
> "It will be at once seen that the act is not mandatory. It confers upon Boards of Education authority or discretionary power to provide insurance 'against the negligence of the drivers of school busses, . . .' It will be further observed that the insurance authorized is not that of indemnity against the liability of Boards of Education. It specifically covers only the negligence of drivers. The driver's individual liability could not be questioned. Without conceding that the Legislature has the power to grant the right to sue an arm of the State Government, we are of the opinion that exercise of that power does not appear to have been a part of the legislative intention shown by the act under consideration. . . . We believe that the act in question, liberally construed, cannot be extended by necessary, or clear, implication so that it would constitute a legislative abolition of immunity. We do not mean by that observation to hold that an express immunity from liability can be impliedly abolished, but simply to state that even argumentatively conceding that that result could be so brought about, we do not believe that the legislation under consideration would fall within that rule. If we

thought the question were before us, our present inclination would be to hold that if the Legislature had that power affecting a constitutional part of the State Government, the only effective exercise of that power would be by a clearly expressed enactment."

The above cases, although not controlling upon this court as to the construction to be placed upon our statute, are nevertheless persuasive that the common-law rule of governmental immunity from tort liability is not waived by a municipal corporation merely as the result of the procurement by it of liability insurance under a statute authorizing the purchase of insurance insuring the officers, appointees, agents and employees of such municipal corporation. Such is the conclusion of this court.

As a final contention, it is urged by appellant that, as alleged in the complaint, the immunity of appellee was waived by the fact that the insurance carrier "is defending and will continue to defend this action on behalf of defendant (appellee)." It is true that the statute (§39-1819, *supra*) provided that ". . . such insurance carrier will not set up, as a defense, the immunity of . . . such municipal corporation, . . ." However, such fact as alleged fails to constitute waiver of immunity for two distinct reasons: (1) A municipal corporation cannot waive its immunity except as authorized by legislative action, 160 ALR 83, and as we have heretofore observed, there is no provision in the statute which expressly modifies or by necessary implication authorizes waiver of such immunity. Furthermore, (2) unless otherwise provided, contracts for liability or indemnity insurance are ordinarily construed as being for the benefit and protection of the insured. Our statute in this regard provides for the ". . . purchase

... of insurance *insuring the officers, appointees, agents and employees . . . for loss or damage* resulting from bodily injury to, . . . any person or persons . . ." §39-1819, *supra.* (Our italics.) Therefore, the contract of insurance herein must be considered as being primarily for the protection of the *officers and employees of the school corporation* and, this action being against the insured and not the insurance carrier, it is no concern of the claimant, who is not a party to the contract of insurance, that defense is being made in this action by the insurance carrier.

Appellant's counsel has presented an able argument as to a need to "liberalize" our law so as to provide protection to persons injured as the result of the negligence of public officials, particularly with respect to their proprietary functions. However, we are constrained to conclude that our statute (§39-1819, *supra*) does not so provide, and we are not permitted to write into it provisions which it does not contain.

Judgment is therefore affirmed.

NOTE.—Reported in 112 N. E. 2d 891.