The VANDERBURGH COUNTY DRAIN-
AGE BOARD, Defendant-Appellant,

v.

Richard A. CLOUSE and Jo Ellen
Clouse, Plaintiffs-Appellees,

and

The Board of Commissioners of
Vanderburgh County, Indiana,
Defendant-Appellee.

No. 1–879A210.

Court of Appeals of Indiana,
First District.

Dec. 31, 1979.

Edwin R. Smith, Jr., Paul E. Wendel, Evansville, for defendant-appellant.

John D. Clouse, Michael C. Keating, Evansville, for plaintiffs-appellees.

LOWDERMILK, Presiding Judge.

STATEMENT OF THE CASE

Defendant-appellant The Vanderburgh County Drainage Board appeals from a judgment in favor of plaintiffs-appellees Richard A. Clouse and Jo Ellen Clouse in their suit for damages for the negligent damage of a private bridge and appurtenant structures located on a legal drain.

We affirm.

FACTS

In September, 1969, Richard A. Clouse and Jo Ellen Clouse, husband and wife, procured the construction of a private bridge over a drainage ditch or "legal drain," known as the Crawford-Brandeis Extension, on their land in Evansville, Indiana. There is no evidence that the Clouses or those who built the bridge ever requested approval of the bridge by the Vanderburgh County Drainage Board or the Vanderburgh County Surveyor or that permission to construct the bridge was ever granted. In August, 1977, a contractor performed dredging work on the ditch on behalf of the Drainage Board. The dredging caused a change in the direction of·the flow of water under the bridge, and the water contacted the embankments around the bridge at a different place. Since the dredging was done, the embankments or riprap have eroded considerably. Furthermore, Richard Clouse testified that the embankments were directly damaged by the equipment used in dredging. However, the bridge itself was not harmed.

The Clouses brought a negligence action against the Drainage Board and the Board of Commissioners of Vanderburgh County. After a trial without a jury before the Master Commissioner of the Vanderburgh Circuit Court, judgment was entered in favor of the Board of Commissioners but against the Drainage Board and $3,000.00 in damages were awarded to the Clouses. The Drainage Board filed a motion to correct

errors, which was overruled, and the Drainage Board now appeals.[1]

## ISSUE

The issue in this appeal is whether the owners of a private bridge over a legal drain may recover from a county drainage board for damage negligently done to the embankments around the bridge where the owners failed to obtain permission to erect the bridge and embankments.

## DISCUSSION AND DECISION

The Drainage Board contends basically that the Indiana Drainage Code of 1965, IC 1971, 19–4–1–1 through 19–4–10–5 (Burns Code Ed.), precludes the Clouses from recovering for damage done to their bridge embankment because of the dredging.

It is undisputed that the Crawford-Brandeis Extension is a "legal drain" under the Drainage Code. *See,* IC 1971, 19–4–1–2(10) (Burns Code Ed.). The Clouses do not challenge the Drainage Board's characterization of their bridge and embankments as a "private crossing."

The Drainage Board asserts at the outset that IC 19–4–6–1 (Burns Code Ed.) provides the only standard of care to which they can be held in situations in which maintenance work is performed on a legal drain. That section provides as follows:

"19–4–6–1 . . . . The surveyor, or the board, or any duly authorized representative of either the surveyor or the board, in the performance of any duty required or permitted under the provisions of this act [19–4–1–1—19–4–10–5], shall have the right of entry over and upon lands lying within seventy-five [75] feet of any legal drain, the seventy-five [75] feet to be measured at right angles to the center line of any legal tile ditch, and to be measured at right angles from the existing top edge of each bank of a legal open ditch as determined by the surveyor. Spoil bank spreading resulting from an improvement to a legal open ditch may extend beyond said seventy-five [75] foot right-of-way if in the opinion of the surveyor the same is necessary and provision has been made in the engineers report therefor prior to the hearing thereon. *All persons exercising the right given by this section shall use due care to avoid damage to* crops, fences, buildings and other *structures outside of the right-of-way, and to* crops and *approved structures inside the right-of-way insofar as possible.*

The owners of lands over which the right-of-way runs may use such land in any manner not inconsistent with the proper operation of the drain and the provisions of this act. *Permanent structures may not be placed on any right-of-way unless the written consent of the board is first obtained.* Temporary structures may be placed upon or over such right-of-way without the written consent of the board, but shall be removed immediately by the landowner when so ordered by the board or by the surveyor. Crops grown on a right-of-way are at the risk of the landowner, and if necessary in the reconstruction or maintenance of the drain may be damaged or destroyed without liability on the part of the surveyor, the board, or their representatives. Trees, shrubs, and woody vegetation may not be planted in the right-of-way, except by express written consent of the board, and existing trees and shrubs may be removed by the surveyor if necessary to the proper operation or maintenance of the drain. . ."
(Our emphasis)

The Drainage Board maintains that it has a duty to use due care not to damage any structures outside the right-of-way or approved structures inside the right-of-way. The Drainage Board infers that it cannot be held liable for any damage it may do to

---

1. The appellant's brief purports to have been filed on behalf of both the Board of Commissioners and the Drainage Board. However, only the Drainage Board filed a motion to correct errors. The Board of Commissioners is a party to the appeal because of Ind.Rules of Procedure, Appellate Rule 2(B), but we deem it an inactive party. *Marshall v. Russell R. Ewin, Inc.,* (1972) 152 Ind.App. 171, 282 N.E.2d 841.

unapproved structures within the right-of-way. The Drainage Board also draws our attention to IC 1971, 19–4–6–6(d) (Burns Code Ed.), which provides as follows:

"(d) No private crossing, control dam or other permanent structure may be placed over or through any legal open drain unless the plans and specifications therefor are first approved by the surveyor. If such plans and specifications do not show that the structure when constructed will meet structural and hydraulic requirements that will permit the drain to function properly the surveyor shall disapprove such plans."

There was no evidence that the Clouses obtained the consent of the Drainage Board or the approval of the County Surveyor, so the Drainage Board concludes that the bridge and embankments are unapproved structures for the negligent damage of which it cannot be held liable.

The Drainage Board claims that support for its position is provided by IC 1971, 19–4–6–6(c) (Burns Code Ed.):

"(c) When, in the reconstruction or periodic maintenance of a legal drain, the surveyor determines that an existing private crossing will not adequately handle the flow of water from the drain or will be endangered by such flow, he shall in his plans call for the removal of the crossing. The replacement of such private crossing, when necessary, may be accomplished as a part of the work of the improvement and the estimate by the surveyor of the cost for such replacement shall be assessed against those lands which would otherwise be deprived of ingress and egress; except however, when a private crossing has been in prior time lawfully established and maintained, the board may assess against all affected lands any portion of the cost of its replacement."

The Drainage Board argues that under this provision, it could have assessed the entire replacement cost of the bridge and embankments against the Clouses even if the structures had been lawfully established. Because the Clouses did not obtain permission to build the crossing, however, the Drainage Board maintains that if it had found it necessary to replace the crossing, it would have had to assess the replacement cost to the Clouses. Thus, the Drainage Board concludes that the Clouses are not being burdened with any expense for which they are not already liable.

The Clouses maintain that IC 19–4–6–1 does not state that there is no duty of care regarding unapproved structures, assuming, *arguendo*, that their bridge was a permanent unapproved structure. They point out that IC 19–4–6–1 expressly provides for immunity from liability for the destruction of crops: "Crops grown on a right-of-way are at the risk of the landowner, and if necessary in the reconstruction or maintenance of the drain may be damaged or destroyed without liability on the part of the surveyor, the board, or their representatives." The Clouses argue, were it not for the Drainage Code, there would be no doubt that the common law would permit recovery here. They state that cases such as *Hummer v. School City of Hartford City,* (1953) 124 Ind.App. 30, 112 N.E.2d 891, establish that if a statute is ambiguous, it must be construed against modification of the common law rule.

Furthermore, the Clouses assert that their structures were not removed, as contemplated by IC 19–4–6–6(c), but were instead negligently damaged. Furthermore, they argue that the county surveyor did not make the determination that the bridge was inadequate to handle the flow of water or was endangered by the flow. In the same light, they allege that the findings required by IC 1971, 19–4–6–2 (Burns Code Ed.) were not made and the requisite notice was not given. That section states:

"19–4–6–2 . . . . OBSTRUCTION OF DRAINS BY OWNERS OF LAND.— When any legal drain is obstructed or damaged by logs, trees, brush, unauthorized structures, trash or debris, excavating or filling, pasturing livestock, or any other manner, the surveyor shall immediately remove such obstruction and repair such damage. *If,* however, *the obstruc-*

*tion or damage is caused by an owner of land affected by the drain the surveyor shall first mail a notice to such owner* by United States mail, return receipt requested, requiring the owner to remove the obstruction and repair the damage, and upon a failure of such owner to so do within ten [10] days after receipt of such notice the surveyor shall perform such work and the cost thereof shall be paid for out of the annual maintenance fund of such drain if one has been established, and if no such fund has been established then out of the general drain improvement fund.

If the obstruction or damage has been caused by the acts or omissions of an owner of land affected by the drain *the board may, after a hearing brought on by written notice served on such owner, add an amount,* sufficient to pay for such damage *to the next annual assessment* made against the lands of such owner, and the board shall certify such assessment to the auditor like any other assessment. If the obstruction or damage is caused by the acts or omissions of a person other than the owner of lands affected by the drain, the board may institute suit against such person in any court of competent jurisdiction and shall be entitled to recover the reasonable value of removing the obstruction and repairing the damage plus a reasonable attorney fee for the board's attorney. * * * " (Our emphasis)

Finally, the Clouses contend that the trial court's decision is sustainable on another theory. Richard Clouse testified that before the dredging began, he asked Quentin Stahl, the contractor, and Paul Mindrup, an inspector with the County Surveyor's office, if they would stay at least fifteen to twenty feet from the riprap walls. Mindrup allegedly answered that there would be no problem with that. Thus, the Clouses argue that the Drainage Board voluntarily assumed a duty not to damage the bridge or adjacent embankments.

We need not determine whether this last theory would support the judgment. The testimony referred to is evidence upon which the trial court could reasonably rely in finding that the Drainage Board did not find it necessary to remove the bridge and its embankments.[2]

We find it decisive that the Drainage Board did not comply with the statutory requirements for removal of such structures and that IC 19–4–6–1 does not expressly relieve the Drainage Board of liability for negligent damage done to unauthorized structures on the right-of-way. The Drainage Board has not persuaded us that the Indiana Drainage Code of 1965 relieves it of liability for negligent damage to property in this situation.

Judgment affirmed.

ROBERTSON and NEAL, JJ., concur.

2. Mindrup testified that according to the specifications given by the Surveyor's office to the contractor, the bridge would have been removed because of its width. However, the work done on the ditch was modified to accommodate the bridge, according to Mindrup.