## CITY ·OF KOKOMO v. LOY.

[No. 23,101.   Filed June 1, 1916.]

1. MUNICIPAL CORPORATIONS.—*Torts.*—*Liability in General.*— Municipal · corporations are not liable for negligent acts while in the discharge of their political or governmental functions as branches of the state or sovereign power, but they are liable for their negligence while exercising their private, proprietary or corporate right, the true test of liability being not· the nature of the tort, or the relation existing between the city and the person injured, or whether the city was engaged in the management of tangible property, but in what capacity the city was acting at the time.   p. 20.

2. MUNICIPAL CORPORATIONS.—*Parks.*—*Negligence.*—*Liability.*—A municipal corporation having the power of exclusive control and custody of its parks, which power is exercised through a board of park trustees created in accordance with §8747a Burns 1914, Acts 1909 p. 155, is liable for injury flowing from negligence in their management, since in the performance of duties incident to conducting a park the city is acting in its corporate capacity rather than as an agent of the state.   p. 26.

3. PLEADING.—*Complaint.*—*Amendment.*—In an action for damages for· personal injury, it was not error for the trial court to permit the plaintiff to amend his complaint at the close of the evidence where no new cause of action was stated, the averments in the amendment being made merely to cover evidence admitted without objection under the original complaint.   p. 27.

4. TRIAL.—*Instructions.*—*Requests.*—*Refusal to Repeat Instructions.*—It is not error for the trial court to refuse an instruction where the subject-matter of such instruction is embodied in others given by the court.   p. 27.

From Howard Circuit Court; *William C. Purdum,* Judge.

Action by Frank Loy against the city of Kokomo. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*Herron & Byers* and *Bell, Kirkpatrick & Voorhis,* for appellant.

*Harper & Fuelber* and *Blacklidge, Wolf & Barnes,* for appellee.

LAIRY, J.—This was an action brought by appellee, Frank Loy, against appellant, city of Kokomo, on account of personal injuries received by him while working as an employe in the Kokomo City Park, known as Highland Park, which injuries were sustained by reason of the discharge of a cannon which, under the direction of one Riley acting for the park superintendent, appellee was attempting to unload. The cause was tried by a jury and a verdict returned in favor of the appellee. His damages were assessed at $3,500, and judgment followed accordingly.

Appellant presents on appeal that the trial court erred in its rulings as to the sufficiency of the pleadings in permitting appellee to amend his complaint at the conclusion of the testimony received at the trial, and in overruling appellant's motion for a new trial. As conceded by appellant, the pleadings were framed and the case was tried and determined upon the theory that the city of Kokomo, in maintaining and conducting the park, was exercising its private and corporate function. Appellant earnestly insisted below and here contends that this theory is wrong and, as the issue of law involved was raised by demurrer, objections to the introduction of testimony, and exceptions to the instructions, the determination of this question will dispose of practically all of the objections presented.

As disclosed by the record, the facts upon which the action is based are briefly and in substance as follows: Appellant was a municipal corporation, organized under the laws of Indiana, and owned and maintained for the benefit of the public a park known as the Kokomo City Park. The common council of the city had appointed a board of park trustees, under §8747a Burns 1914, Acts

1909 p. 155, to take charge of the park and its employes in caring for the same, and at the time of the injury complained of, appellee was under the employ of the board and under the direction of the park superintendent. On July 3, 1911, the regularly appointed superintendent ordered and directed appellee, during the following days thereafter and until his return, to obey the directions of one Allen Riley. The following day it was discovered that an old cannon which stood in the park had been loaded by miscreants, and Riley, acting as superintendent, ordered and directed appellee to withdraw the charge therefrom, so as to remove the danger to persons congregating in the park. It is alleged in the complaint that appellee remonstrated, but was peremptorily ordered to unload the cannon and was informed by Riley that there was no danger in doing so; that he furnished appellee with a stiff wire and directed him to insert it in the cannon; that the withdrawal of the charge was fraught with great danger and that the wire was an unfit implement for such purpose, of which facts appellee was ignorant but which were well known to Riley; that appellee was compelled to stand immediately before the muzzle of the cannon and, relying upon the assurances of Riley, he inserted the wire as directed; that the cannon was thereby discharged and that as a result thereof appellee was permanently injured and crippled.

Municipal corporations exist in a dual capacity and their functions are twofold. In one they exercise the right springing from sovereignty and, while in the performance of the duties pertaining thereto, their acts are political and governmental. Their officers and agents in such capacity, though elected or appointed by them,

1.

are nevertheless public functionaries performing a public service, and as such they are officers, agents and servants of the state. In the other capacity the municipalities exercise a private, proprietary or corporate right, arising from their existence as legal persons and not as public agents. Their officers and agents in the performance of such functions act in behalf of the municipalities in their corporate or individual capacity and not for the state or sovereign power. *Wagner* v. *Portland* (1902), 40 Ore. 389, 60 Pac. 985, 67 Pac. 300; *Galveston* v. *Posnainsky* (1884), 62 Tex. 118, 50 Am. Rep. 517. In order that the state may perform its functions, it is necessary for it to be represented by agencies of government and, where these agencies merely perform such governmental functions, holding them responsible for negligence would be manifestly the same as holding the sovereign power answerable. On the other hand, a state agency, as a corporation, acquires an individuality distinct from the sovereign power, and the principle stated does not prevent the corporate body from being held liable for its *own* negligence, no more than it would exempt a public state officer from liability for his negligence in the management of his personal or private affairs.

The question of whether a municipal corporation may be made to respond in damages for a tort, either of misfeasance or nonfeasance, in connection with a particular department of activity, depends, according to the weight of authority, upon whether the duties of that department pertain to the public and governmental functions, or to the private and corporate administration of the municipality. In some jurisdictions, however, exceptions to this general principle seem to have been recognized. It has been held that a muni-

cipality is liable for the maintenance of a public nuisance, even though in maintaining such nuisance it is in the discharge of a governmental function. *Hughes* v. *City, etc.* (1889), 73 Wis. 380, 41 N. W. 407; *Anable* v. *Board* (1904), 34 Ind. App. 72, 71 N. E. 272, 107 Am. St. 173. Another exception is attempted, in cases such as the one before this court, where the cause of action arises from a breach of duty owing to an employe or servant of the municipality, it being contended that the municipality would be liable under such circumstances on account of the breach of a duty arising out of the relation of master and servant, even though the municipality was at the time engaged in the performance of a governmental duty. *Colwell* v. *Waterbury* (1902), 74 Conn. 568, 51 Atl. 530, 57 L. R. A. 218; *O'Brien* v. *Derry* (1905), 73 N. H. 198, 60 Atl. 843. Still another exception seems to have been recognized, where the liability of the municipality was based upon instances where the duty negligently performed was in the management of property, it being in some of the cases pointed out that in the execution of the work and management of such property that the duties are merely ministerial; hence the liability for their neglect. *Bowden* v. *Kansas City* (1904), 69 Kan. 587, 77 Pac. 573, 66 L. R. A. 181, 105 Am. St. 187, 1 Ann. Cas. 955; *City of Lafayette* v. *Allen* (1881), 81 Ind. 166; *City of Greencastle* v. *Martin* (1881), 74 Ind. 449, 39 Am. Rep. 93.

Inasmuch as the reason for the established doctrine of nonliability of municipalities acting in the discharge of governmental affairs is that, in the exercise of such powers they are merely branches of the state or sovereign power, and therefore a part of the state in that regard and thus not liable as a matter of established public policy,

the attempted and recognized exceptions referred to do not seem to be well founded. The liability or nonliability of a municipality for its torts does not depend upon the nature of the tort, or the relation existing between the city and the person injured, or whether the city was engaged in the management of tangible property, but depends upon the *capacity* in which the city was acting at the time.

While the distinction between public and private functions as affecting liability for negligence of its agents is generally recognized, a great deal of confusion arises when an attempt is made to determine in what capacity the municipality was acting in committing the particular tort complained of. Many different rules have been formulated on the subject by jurists and text-writers, who apply tests of whether the department in which the injury occurred was of a nature legislative or administrative, discretionary or ministerial, performed by persons whose offices were created by the legislature or the municipality, whether the department and its duties were made mandatory by the statutes of the state or were merely permissive, or whether the city received any pecuniary benefit in the operation of such department or operated it gratuitously. Such rules and tests have no uniform application and many authorities expressly find it impossible to state by way of definition any rule sufficiently exact to be of much practical value. Each case must be determined under a true interpretation of the statute under which the municipality was created and under a proper conception of the powers and duties delegated to it. Upon the historical theory that the king or sovereign power is being exercised in the keeping of the peace, passing and enforcing laws and ordinances, preserv-

ing the public health, preventing fires, caring for the poor and carrying on a system of education and that such power is inherently present in such activities, it is generally held that a city is exercising governmental powers in the operation of the departments having charge of these matters, and that it is therefore not liable for torts committed in the discharge of the duties connected therewith. The obligation which rests upon cities to keep their highways in repair and their drains and sewers in a similar condition has been generally recognized, but opposite views have been formulated as to the liability of. such municipalities for torts committed in connection with such activities. In Massachusetts and the states which have followed its lead in this regard the decisions hold that a city is not liable in the absence of statute in the performance of these municipal duties. In so far as these jurisdictions have had occasion to pass upon the question of whether a city is liable for the proper maintenance of a public park, they have consistently denied such liability. *Clark* v. *Waltham* (1880), 128 Mass. 567; *Blair* v. *Granger* (1902), 24 R. I. 17, 51 Atl. 1042; *Bisbing* v. *Asbury Park* (1910), 80 N. J. Law 416, 78 Atl. 196, 33 L. R. A. 523. A later view of the Massachusetts courts was to the effect that a city would not be liable in the absence of a statute in the negligent operation of any of its departments, unless the duty connected therewith was imposed for the pecuniary benefit of the municipality. *Hill* v. *Boston* (1877), 122 Mass. 344, 23 Am. Rep. 332. This view also seems to have entered into the decisions of the other jurisdictions which have followed Massachusetts in denying the liability of cities for the negligent management of parks. *Board, etc.* v. *Prinz* (1907), 127 Ky. 460, 105 S. W. 948; *Russell* v. *Tacoma*

(1894), 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Bernstine* v. *Milwaukee* (1914), 158 Wis. 576, 149 N. W. 382, L. R. A. 1915C 435; *Harper* v. *City of Topeka* (1914), 92 Kan. 11, 139 Pac. 1018, 51 L. R. A. (N. S.) 1032.

In New York it was early announced and recognized that a city having by statute the exclusive control and supervision of its streets was liable for their proper maintenance. Many jurisdictions followed this doctrine. Like New York they similarly applied it in cases arising out of negligence in the control of parks, and affirmed the liability of the city for such negligence committed in their operation. *Ehrgott* v. *Mayor,* etc. (1884), 96 N. Y. 264, 48 Am. Rep. 622; *Mahon* v. *Mayor, etc.* (1895), 10 Misc. Rep. 664, 31 N. Y. Supp. 676; *Pennell, etc.* v. *Wilmington* (1906), 7 Pennewill (Del.) 229, 78 Atl. 915; *City of Denver* v. *Spencer* (1905), 34 Colo. 270, 82 Pac. 590; *City, etc.* v. *Cox* (1913), 55 Colo. 264, 133 Pac. 1040; *Capp* v. *St. Louis* (1913), 251 Mo. 345, 158 S. W. 616, 46 L. R. A. (N. S.) 731, Ann. Cas. 1915C 245; *Ankenbrand* v. *Philadelphia* (1913), 52 Pa. Super. Ct. 581; *Anadarko* v. *Swain* (1914), 42 Okla. 741, 142 Pac. 1104.

In this state scarcely any authority need be cited to show that our courts have accepted the doctrine recognized in New York and that our cities are held liable for damages arising from the neglect of such cities in keeping their streets and highways in repair. Such liability is fixed by an unvarying line of decisions and has been stated to arise from the common-law principle that where a power is given and a duty imposed, a corresponding liability arises for the proper exercise of that power and the discharge of that duty. *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 78 N. E. 657, 12 L. R. A. (N. S.) 416,

and cases there cited.    Although no case has been
decided in this state which determines the
2.    liability of a city for neglect in the manage-
ment of a park, the same reasons which affirm
the city's liability in respect to its streets are present
in the consideration of such city's liability in re-
spect to the management of a park.    The board
of park trustees was created by the act heretofore
referred to, whereby the powers of the city over the
park through such board are made practically
identical with the powers of the city over its streets.
The liabilities, therefore, which arise from the
exercise of these powers would seem to be the
same.    The liability of a city in this state for the
proper maintenance of a park may thus be consist-
ently placed upon the theory that where a power is
given and a duty imposed, a corresponding liability
arises for the proper exercises thereof, and an
analogy can be drawn between parks and streets in
this regard as has been done expressly in *Ehrgott*
v. *Mayor, etc.*, and *Pennell, etc.* v. *Wilmington,*
*supra.*    As the courts of Indiana have adhered
to the doctrine of the New York courts in regard to
the liability of cities for the proper maintenance of
streets, they would be inconsistent in failing to
accept the view of that jurisdiction in reference to
the liability of cities in respect to their parks.
The doctrine of the liability of our cities in respect
to streets was recognized long prior to the act of
1905 (Acts 1905 p. 281, §8697 Burns 1914),
relied on by appellee and, in view of the con-
clusions reached, the effect of this statute need
not be discussed.    The uniform decisions of our
courts holding the cities of this state responsible
for the acts of their street and sewer departments
are conclusive as to the point under consideration,
the responsibility of the city for the acts of its

park commissioners being fixed by the view that such board occupies the same relation to the corporate city as that occupied by the departments in control of the streets and sewers. The rulings of the trial court based upon the theory here announced were correct.

There was no error in permitting appellee to amend his complaint at the close of the evidence, as no new cause of action was stated. Direct 3. averments were made in such amendment to cover the evidence already in, and unobjected to, which evidence had been admitted under recitals contained in the pleading as originally filed. *Burr* v. *Mendenhall* (1875), 49 Ind. 496, and cases there cited.

Practically all of the questions raised by the objections to the instructions have been covered by what has been said. It is insisted, however, that instruction No. 14, given by the court, was an improper statement of the law in regard to the care appellee was required to exercise in observing the dangerous condition of the loaded cannon, and that instruction No. 24, tendered by appellant and refused by the court, was a correct statement of the law in this regard. While the instruction tendered was more in detail as to the care to be observed, instruction No. 14 was not erroneous, and instruction No. 16, tendered by appellee and given by the court, sufficiently advised the jury upon this proposition. There is no error in refusing to 4. repeat instructions. *City of Muncie* v. *Hey* (1904), 164 Ind. 570, 74 N. E. 250.

There was evidence to sustain the verdict and the judgment of the trial court is affirmed.

NOTE.—Reported in 112 N. E. 994. Municipal liability for injuries caused by negligence of park commissioners, note, 2 L. R. A. (N. S.) 147. See also 12 Am. St. 754; 28 Cyc 1257, 1269, 1311.