BRINKMAN *v.* CITY OF INDIANAPOLIS ET AL.

[No. 20,628. Filed November 28, 1967. Rehearing Denied December 14, 1967. Transfer Denied August 7, 1968.]

*Hall, Frazier & Crokin* and *William D. Hall,* of counsel, of Indianapolis, for appellant.

*Michael B. Reddington,* of Indianapolis, for appellees.

SMITH, J.—This appeal comes to us from the Marion Superior Court, Room No. 2, where this action was brought by the appellant, Louise Brinkman, as administratrix of the estate of Jack B. Brinkman, deceased, for funeral expenses, compensatory and punitive damages, and attorney fees resulting from the alleged wrongful death of the decedent, Jack B. Brinkman.

The facts, as alleged in substance in the amended complaint and disclosed by the record, are as follows:

The defendant-appellee, Carl V. Lambert, a police officer from the City of Indianapolis Police Department, was summoned to the residence of Mr. Brinkman at 11:30 P.M. on January 16, 1965, for the purpose of taking Mr. Brinkman to the hospital for medical care. Mr. Brinkman was very ill and running a high temperature. When Officer Lambert arrived, Mr. Brinkman's friends were present and explained the situation to said officer. Officer Lambert agreed to take Mr. Brinkman to the hospital, but after departing with Mr. Brinkman, Officer Lambert placed him under arrest, charging him with being a disorderly person, with drunkenness and with having a premental condition. Mr. Brinkman was booked and put into the City of Indianapolis Jail without being given medical attention.

On January 17, 1965, about 1:00 A.M., Officer Lambert telephoned the appellant and informed her that he had arrested Mr. Brinkman. The appellant was told that she could not post bond or see her husband at that time. That same night, on January 17, 1965, Mr. Brinkman died in his jail cell.

An autopsy, which was performed soon after death, revealed that there was no alcoholic content in Mr. Brinkman's body. The cause of his death was determined to be lobar

pneumonia of the left lower lobe and severe congestion of the remainder of both lungs.

The plaintiff's amended complaint further alleged in substance that Mr. Brinkman's death was caused by Officer Lambert and the City of Indianapolis, who breached their duty to the decedent by placing him in jail without furnishing him medical attention or care; and that Mr. Brinkman's death was a direct and proximate result of the defendants' gross carelessness and negligence, their gross and wanton misconduct, and their conscious disregard for his life when they knew or had reason to believe he was in need of immediate medical attention.

The defendant-appellees filed their demurrer to the appellant's amended complaint, which demurrer was sustained as to the defendant, City of Indianapolis, but overruled as to the defendant, Officer Lambert. The appellant refused to plead over as to the appellee, City of Indianapolis, and the trial court thereupon entered a judgment for appellee, City of Indianapolis, and against appellant on her amended complaint.

The appellant now maintains that the trial court erred in sustaining the demurrer of the appellee, City of Indianapolis, to the amended complaint; that such action was contrary to law; and that costs should not have been assessed against the appellant.

The issue presented by this appeal is whether or not the City of Indianapolis shall be held responsible for the consequences of the arrest made by police officer, Carl V. Lambert.

The appellant argues that Officer Lambert was engaged in a corporate or proprietary function at the time of the arrest, as compared to a governmental act, and that, therefore, the doctrine of governmental immunity does not apply to shield the city from liability.

The major exception to the rule of municipal tort immunity is that which involves functions that are regarded by the

courts as proprietary. Cities are held to be liable for torts occurring in the performance of proprietary functions. *Flowers* v. *Board of Commissioners of the County of Vanderburgh, et al.* (1960), 240 Ind. 668, 168 N. E. 2d 224.

On the other hand, immunity, in the language of most courts, is an attribute of governmental functions exercised solely for the public at large and not for the private benefit of the municipality. *City of Indianapolis* v. *Butzke* (1940), 217 Ind. 203, 26 N. E. 2d 754; *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 112 N. E. 994; *City of Evansville* v. *Blue* (1937), 212 Ind. 130, 8 N. E. 2d 224.

The governmental-proprietary rule, however, often produces legalistic distinctions that are only remotely related to the fundamental considerations of municipal tort responsibility. As for example, it does not seem to be good policy to permit the chance that a school building may or may not be producing rental income at the time, determine whether a victim may recover for a fall into a dark and unguarded basement stairway or elevator shaft. Neither does it seem to be good policy to find that a municipal garbage truck is engaged in a *nonimmune* proprietary function when enroute from a wash rack to the garage while the same truck is engaged in an *immune* governmental function when enroute to a garbage pickup.

The inherent inequities found in the governmental-proprietary distinction and the availabliity of liability insurance as a substitute for and a supplement to governmental liability, have caused many states to abrogate the doctrine of municipal tort immunity. *Holytz* v. *City of Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618; *Spanel* v. *Mounds View School Dist.* (1962), 264 Minn. 279, 118 N. W. 2d 795; *City of Louisville* v. *Chapman* (1967, Ky.), 413 S. W. 2d 74; *Bernardine* v. *City of New York* (1945), 294 N. Y. 361, 62 N. E. 2d 604; *Molitor* v. *Kaneland Community Unit Dist.*

No. *302* (1959), 18 Ill. 2d 11, 163 N. E. 2d 89; *Callopy* v.
*Newark Eye and Ear Infirmary* (1958), 27 N. J. 29, 141 A.
2d 276; *Muskopf* v. *Corning Hosp. Dist.* (1961), 55 Cal.
2d 211, 359 P. 2d 457; *Williams* v. *City of Detroit* (1961);
364 Mich. 231, 111 N. W. 2d 1; *Hargrove* v. *Town of Cocoa
Beach* (1957, Fla.), 96 So. 2d 130; *Stone* v. *Arizona High-
way Commission* (1963), 93 Ariz. 384, 381 P. 2d 107; *City
of Fairbanks* v. *Schaible* (1962), 375 P. 2d 201; *Colorado
Racing Commission* v. *Brush Racing Assn.* (1957), 136 Colo.
279, 316 P. 2d 582; *Rice* v. *Clark County* (1963), 79 Nev.
253, 382 P. 2d 605; *McAndrew* v. *Mularchuk* (1960), 33
N. J. 172, 162 A. 2d 820; *McDowell* v. *Mackie* (1961), 365
Mich. 268, 112 N. W. 2d 491; *Haney* v. *City of Lexington*
(1965, Ky.), 386 S. W. 2d 738.

The extent to which a municipal corporation should be held
liable for torts committed by its officers or employees in the
course of their employment is a perplexing problem that has
been the subject of litigation on many occasions. There has
been a general apprehension that fraud and excessive liti-
gation would result in unbearable cost to the public in the
event municipal corporations were treated as ordinary persons
for purposes of tort liability. On the other hand, the un-
fairness to the innocent victim of a principle of complete
tort immunity and the social desirability of spreading the loss
—a trend now evident in many fields—have been often ad-
vanced as arguments in favor of extending the scope of liabil-
ity. It is doubtful whether the purposes of tort law are well
served by either the immunity rule or its exceptions. After
careful consideration we are of the opinion that the doctrine
of sovereign immunity has no proper place in the adminis-
tration of a municipal corporation.

The question of municipal immunity was recently before
the Court of Appeals of Kentucky. The court, in its opinion,
held the municipality liable for the tort of a policeman, stat-
ing that:

"Municipal functions have become so varied and extensive that public safety demands that municipal employees be held to the same safety standards as other citizens. Private citizens voluntarily and for good economic reasons insure themselves against tort liability. Why shouldn't a collection of citizens classified as a municipality do likewise?" *City of Louisville* v. *Chapman* (1967, Ky.), *supra*.

In *Hargrove* v. *Town of Cocoa Beach* (1957, Fla.), *supra*, the Supreme Court of Florida held the city liable when a prisoner, left unattended in jail, was suffocated when a fire occurred. It declared that any municipality should have no immunity from tort liability, even in its governmental capacity. "To continue to endow this type of organization with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism."

We could not hope to improve upon the language of the courts quoted in the above citations in expressing our opinion on this matter.

Absent the doctrine of municipal immunity, the municipal corporation may be found liable for a tort, but only if the relationship of principal and agent, or master and servant be found to exist between the municipality and the person who committed the tort. When there is an immune function, the doctrine of *respondeat superior* becomes immaterial. However, when immunity is abrogated, liability depends upon whether or not the doctrine of *respondeat superior* applies.

The appellee maintains that police officers are not employees, servants or agents of cities, but are rather the separate arm of the state itself to maintain peace and order, and because of this status, the City of Indianapolis can never be held responsible for the action of those who are not its agents or servants; nor does the rule of *respondeat superior* apply to the police-city relationship.

The appellee cites several cases as authority for the con-

668

tention that a city policeman is not an agent, servant or employee of the city. The most recent of said cases is *Smith, Administratrix,* v. *City of Gary* (1932), 93 Ind. App. 675, 178 N. E. 572. In the *Smith* case, the court stated that:

> "Finding no reversible error, this cause is in all things affirmed on authority of *City of Lafayette* v. *Timberlake* (1882), 88 Ind. 330, which holds that police officers of a city are not its agents or servants, and, since they are not, it is legally impossible that there be any corporate responsibility for their negligence."

In *City of Lafayette* v. *Timberlake et al.* (1882), 88 Ind. 330, it appears that the court based its decision upon the fact that police officers are appointed or employed at the command of the Legislature by the corporate authorities, and thus "There is no more reason for holding cities responsible for the wrongs of police officers than there is for holding counties or townships responsible for the torts of sheriffs and constables." 88 Ind. at Page 333.

In *Town of Laurel* v. *Blue* (1891), 1 Ind. App. 128, 27 N. E. 301, the court held that the town was not liable for the acts of its marshal because, in making arrests, he was acting for the public and not the town proper.

However, we are of the opinion that it is not realistic to say that the City of Indianapolis has no control or power of supervision over its municipal police, or that they do not act on behalf of the municipal corporation. Common sense dictates that municipal police are the agents or servants of the city, and such is the opinion of this court. All cases to the contrary are hereby overruled.

Judicial consistency under the doctrine of *stare decisis* loses its virtue when it conflicts with common sense and present social needs. We, therefore, now recede from any prior decisions holding that a municipal corporation is immune from liability for the torts of police officers. We are of the opinion that a municipal corporation may be

held liable for the torts of police officers under the doctrine of *respondeat superoior*.

The trial court erred in sustaining the appellee's demurrer to the appellant's amended complaint.

Judgment reversed.

Cooper, Faulconer, Pfaff and Prime, JJ. concur.

Carson, C. J., concurs in result only.

Cook, P. J., not participating.

Bierly, J., dissenting without opinion.

NOTE.—Reported in 231 N. E. 2d 169.