269 N.E.2d 765 (1971)
Dewain CAMPBELL et al., Appellants,
v.
STATE of Indiana, Appellee.
No. 869A141.
Appellate Court of Indiana, Division No. 1.
May 27, 1971.
*766 Bayliff, Harrigan, Cord & Maugans by J. Conrad Maugans, Kokomo, for appellants.
Theodore L. Sendak, Atty. Gen., Thomas C. Mills, Mark Peden, Deputy Attys. Gen., Indianapolis, for appellee.
SULLIVAN, Presiding Judge.
Plaintiffs-Appellants sustained personal injuries as a result of a head-on collision with an automobile in appellants' lane of travel upon a state-maintained highway. The plaintiffs' suit was filed against the state alleging negligence in that after repaving the highway:
"5. The Defendant was guilty of the following acts and omissions, each of which was the proximate cause of the injuries and damages to the plaintiffs:
"a. Defendant carelessly and negligently failed to mark with a yellow line the aforesaid State Road 221 where it was unsafe to pass;
"b. Defendant carelessly and negligently failed to install no passing signs along said State Road 221 or any other signs indicating to the traveling public that said public highway was unsafe for passing as aforesaid."
Appellants also alleged that the road as maintained constituted a nuisance. The State's motion to dismiss, based upon the doctrine of sovereign immunity, was sustained. This appeal emanates from the overruling of appellants' motion to correct error in which the trial judge opined:
"Court agrees that in Indiana the state does not enjoy sovereign immunity from liability for torts. Also, neither counties nor the state enjoy such immunity as to their `Proprietary activities.' However, all the existing and controlling precedents are to the effect that the State does enjoy sovereign immunity as to its governmental functions and activities. In my view, the construction and maintenance *767 of state highways is governmental function of the state, not a proprietary function.
"It may well be, as the plaintiffs contend, that the Indiana Supreme Court is moving in the direction of abolishing all such immunities, but unless and until it does, it is this Court's function to apply the law as it exists. Therefore, the plaintiffs' motion to correct errors is overruled."
The trial judge correctly, we believe, indicated that major shifts from ancient legal doctrine have eroded the original sovereign immunity concept. The very specific question, however, to be answered by this court is: Does the state enjoy immunity from liability for personal injury caused by its negligent acts of omission in the maintenance and repair of state highways?
The doctrine of sovereign immunity, or rex non potest peccare, was implanted in the English common law in the case of Russel v. Men of Devon (1788), 2 T.R. 667, 100 Eng.Rep.R. 359, and has remained viable if not unchallenged until relatively recent times. See Perkins v. State (1969), Ind. 251 N.E.2d 30; Klepinger v. Bd. of Com'rs County of Miami (1968), 143 Ind. App. 155, 239 N.E.2d 160; and Brinkman v. City of Indianapolis et al. (1967), 141 Ind. App. 662, 231 N.E.2d 169.
As to municipalities, total abrogation of immunity was suggested in the Brinkman case, supra:
"It is doubtful whether the purposes of tort law are well served by either the immunity rule or its exceptions. After careful consideration we are of the opinion that the doctrine of sovereign immunity has no proper place in the administration of a municipal corporation." 231 N.E.2d 169, 172.
More recently, however, the highest court of this state has suggested that at least as to the state, sovereign immunity remains a valid concept even though its application may be limited. Judge Arterburn's opinion in the Perkins case, supra, stated:
"There may be some logical reason why a government should not be liable for its governmental actions and functions." 251 N.E.2d 30, 35.
We do not here choose to speculate upon what reasons if any may exist for the continued application or misapplication of the traditional governmental-proprietary distinction. Nor do we deem it within our appellate prerogative to judicially abolish sovereign immunity in its entirety. We feel compelled to recognize and honor the aforementioned governmental-proprietary distinction without editorial comment upon its logic or efficacy. Accordingly, we address ourselves to appellants' contentions within the framework of the functional distinction last above mentioned.
Appellants' contention that the state is liable to suit in this cause is constructed upon the framework of the Perkins, Brinkman, and Klepinger cases, supra. Such reliance on the part of appellants is understandable and represents a responsible advocative position. This court, however, cannot adopt that position without also adopting the premise set forth in the Klepinger case that maintenance or repair of streets, highways, or roads is a proprietary as opposed to a governmental function. None of the cases cited by appellants in support of this premise set forth any rationale which is convincing to this court. Those cases, including the Klepinger case, merely state the conclusion that bridge or highway maintenance is proprietary without persuasive supportive reasoning.
The Klepinger case relies upon Flowers v. Bd. of Comr's of Vanderburgh County (1960) 240 Ind. 668, 168 N.E.2d 224, to support the "proprietary" conclusion. The Flowers case, however, involved an injury sustained at a skating rink operated in a county-owned park where skating was permitted upon payment of an admission fee. It, therefore, is akin to the Perkins case which also involved an obviously proprietary *768 function, but neither case lends foundation to the matter-of-fact and otherwise unsupported statement that highway repair is a proprietary function of the state.
To be sure, there are earlier cases in Indiana which attempt to give reason and vitality to the "proprietary" attribute of street or highway maintenance. See City of Kokomo v. Loy (1916) 185 Ind. 18, 112 N.E. 994.
From the City of Kokomo case above cited, it appears that historically the demarcation from governmental activity and immunity took place when the municipality or county departed from educational, police, fire protection, poor relief, legislative or public health activities. In 1971 we see no need or justification for the artificial distinction. The protection from crime, fire, disease and ignorance is only to a degree more important than the movement of countless motor vehicles in commerce upon the highways of the states of this nation. To be sure, the earlier classified activities evoke a more visceral reaction when jeopardized or threatened than does a more "taken for granted" governmental obligation such as highway maintenance. We see no more reason to absolve the school system from liability should one of its teachers negligently injure a pupil than to absolve the State from liability should its highway department fail to install a sign or warning lines at a hazardous point in the highway system.
We hold that there is a governmental obligation on the part of the State of Indiana in 1971 to maintain and repair its public highways. See City of Wooster v. Arbenz (1927) 116 Ohio St. 281, 156 N.E. 210. To the extent, therefore, that Klepinger v. Bd. of Com'rs County of Miami, supra, is inconsistent, the latter case is hereby overruled.
Because governmental duties and obligations are much more inclusive in the 1970's than in the "good old days," we readily recognize the occasional difficulty in relegating some governmentally conducted activities to a proprietary or a governmental pigeonhole. Some such activities appear to fall somewhere in-between or to contain elements or attributes of each such categorized function, e.g., a governmental water utility for fire protection as well as for private consumption. As stated in Brinkman v. City of Indianapolis, supra:
"The governmental-proprietary rule, however, often produces legalistic distinctions that are only remotely related to the fundamental considerations of municipal tort responsibility. As for example, it does not seem to be good policy to permit the chance that a school building may or may not be producing rental income at the time, determine whether a victim may recover for a fall into a dark and unguarded basement stairway or elevator shaft. Neither does it seem to be good policy to find that a municipal garbage truck is engaged in a nonimmune proprietary function when enroute from a wash rack to the garage while the same truck is engaged in an immune governmental function when enroute to a garbage pickup." 231 N.E.2d 169, 171.
See also City of Kokomo v. Loy, supra, at 185 Ind. 23-24, 112 N.E. 994.
Notwithstanding an occasional circumstance which makes application of any standard or definition difficult, we nevertheless feel that a workable definition of the "governmental" function was set forth in Cobia v. Roy City (1961) 12 Utah 2d 375, 366 P.2d 986, 988:
"`The most general test of governmental function relates to the nature of the activity. It must be something done or furnished for the general public good, that is, of a "public or governmental character", such as the maintenance and operation of public schools, hospitals, public charities, public parks or recreational facilities. In addition to the above mentioned general test these supplemental ones are also applied: (a) whether there is special pecuniary benefit or *769 profit to the city and (b) whether the activity is of such a nature as to be in real competition with free enterprise.'"
We hereby adopt such definition in Indiana and hold that the maintenance and repair of state highways falls squarely within such definition. A similar test was well stated in Millar v. Town of Wilson (1942) 222 N.C. 340, 23 S.E.2d 42, and quoted in Clark v. Scheld (1961) 253 N.C. 732, 117 S.E.2d 838:
"Any activity of the municipality which is discretionary, political, legislative or public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary." 23 S.E.2d 42, 44.
Compliance with the above test is not necessarily defeated by minimal or incidental revenue accruing to the sovereign. Scibilia v. City of Philadelphia (1924) 279 Pa. 549, 124 A. 273. Neither does the fact that the State may subcontract the highway repair or maintenance work to private and independent corporations change the nature of the activity. As stated in United States v. Washington Toll Bridge Authority (1960 U.S.D.C.W.D. Wash.) 190 F. Supp. 95, 98:
"A true governmental function remains so whether performed directly by the sovereign or by a private concern under permission and control of the sovereign."
From the days of the Roman Empire, through the development of the common law of England and of American Colonial times, to the present day, the maintenance of roadways has almost uniformly been recognized as a public and governmental responsibility of the sovereign. See Butler v. Perry (1916) 240 U.S. 328, 36 S.Ct. 258, 60 L.Ed. 672.
Authority abounds in other jurisdictions to support such conclusion, and at least insofar as the state, as opposed to municipalities, is concerned Indiana precedent holds State maintenance and repair of public highways to be a "governmental" activity.
In Wright v. House (1919) 188 Ind. 247, 257, 121 N.E. 433, 436, the Supreme Court said:
"The power to construct and maintain public highways is a governmental function, the same as the power to build schoolhouses and support schools or to build courthouses and jails, or to construct and maintain asylums for the insane or for the dependent poor."
At an even earlier date the Court noted:
"The construction and repair of public highways by the state, under any system it may adopt, is the exercise of a state function, and is, as was said by Judge Cooley, supra, the exercise of one of the most important functions of government. [1 Cooley, Taxation (3d ed.) 212]. A uniform tax upon all the property * * * for the construction and repair of public highways, as in the law in controversy here, is for a governmental purpose, the same as a tax to support the public schools of the state, the police power of the state, or to maintain the different departments of the state government." State ex rel. Board of Commissioners of Hendricks County v. Board of Commissioners of Marion County (1908) 170 Ind. 595, 611, 85 N.E. 513, 519.
Well reasoned decisions from other jurisdictions holding similarly constitute the majority position. Atkin v. Kansas (1903) 191 U.S. 207 at 222, 24 S.Ct. 124, 48 L.Ed. 148; Maddox v. City of Birmingham (1936) 232 Ala. 383, 168 So. 424; Barsoom v. City of Reedley (1940) 38 Cal. App.2d 413, 101 P.2d 743; Pelletier v. City of Beverly (1935) 292 Mass. 468, 198 N.E. 772; Ahrend v. Kansas City (1952) 173 Kan. 26, 243 P.2d 1031; O'Hare v. City of Detroit (1960) 362 Mich. 19, 106 N.W.2d 538; Braun v. Wayne County (1942) 303 Mich. 454, 6 N.W.2d 744; Longstreet v. Mecosta County (1924) 228 Mich. 542, 200 N.W. 248; Gunther v. Board of Road *770 Com'rs (1923) 225 Mich. 619, 196 N.W. 386; Riley v. Woolf Bros. (1942) 236 Mo. App. 661, 159 S.W.2d 324; Voorhis v. Cornell Contracting Corp. (1938) 170 Misc. 908, 10 N.Y.S.2d 378; Clark v. Scheld, supra (1961) 253 N.C. 732, 117 S.E.2d 838; Millar v. Town of Wilson, supra (1942) 222 N.C. 340, 23 S.E.2d 42, 44; Wroblewski v. Clark (1958) 88 R.I. 235, 146 A.2d 164; Fonseca v. State (1956 Tex.Civ.App.), 297 S.W.2d 199; Niblock v. Salt Lake City (1941) 100 Utah 573, 111 P.2d 800; Morgan v. City of Logan (1943) 125 W. Va. 445, 24 S.E.2d 760, 761; Lickert v. Harp (1934) 213 Wis. 614, 252 N.W. 296.
In White v. City of Lawton (1961 Okl.) 373 P.2d 25, the Oklahoma Supreme Court stated apropos of the fact situation here presented in that highway maintenance in the sense of traffic control rather than physical repair was involved:
"* * * the regulation of traffic is a governmental function and that a municipality, in regulating and maintaining traffic control signals, is performing a governmental function, not a proprietary or administrative function. See also Johnson v. City of Jackson, 194 Tenn. 20, 250 S.W.2d 1, 33 A.L.R.2d 756."
Again without commenting upon the wisdom or lack thereof in retaining judicially conferred immunity from tort liability regardless of the nature of the activity which constitutes the proximate cause of injury, and so long as we maintain the governmental-proprietary distinction, or the fiction thereof, we feel compelled to reason that the sovereign activity or nonfeasance herein charged is clearly and unmistakably governmental rather than proprietary. In our view, therefore, the ruling of the trial court was and is correct. The judgment below is therefore affirmed.
BUCHANAN and LOWDERMILK, JJ., concur.
ROBERTSON, J., dissents with opinion.
ROBERTSON, Judge (dissenting).
I cannot concur in either the reasoning or result reached in the majority opinion. The classic simplicity with which this case comes to us gives this Court the opportunity to forthrightly deal with an antiquated and unjust legal doctrine.
As correctly indicated in the majority opinion, this jurisdiction has witnessed the cloak of immunity slip away from the shoulders of government. Cities (Brinkman v. City of Indpls. et al. [1967], 141 Ind. App. 662, 231 N.E.2d 169), then counties (Klepinger v. Bd. of Com'rs County of Miami [1968], 143 Ind. App. 155, 239 N.E.2d 160), then the state (Perkins v. State [1969], 18 Ind. Dec. 555, 251 N.E.2d 30), in turn experienced either elimination or substantial diminution of immunity. The reasoning of these three landmark cases sets the course this Court should follow in resolving the question at hand.
The Brinkman case, supra, abolished the doctrine of tort immunity for Indiana for Indiana municipalities. In so holding the distinctions between governmental and proprietary functions were replaced with a master-servant relationship in determining whether or not liability existed on the part of the city. The same theory then found its place in Klepinger v. Bd. of Com'rs County of Miami, supra, wherein this Court held the repair of a bridge was a ministerial or proprietary act, and liability would attach for negligent acts attendant therewith. The Court then further held:
"It is further our opinion that in determining the tort liability of a county or a city, our courts can now ignore the governmental-proprietary distinction * * *." 239 N.E.2d 173.
It must be noted in passing that in spite of the flurry of cases in recent years involving the doctrine at hand, the Klepinger case, supra, reiterated a proposition of long standing in Indiana by breathing new life into the case of House v. Board of Com'rs of Montgomery County (1878), 60 Ind. 580, and expressly overruling Board of Commissioners of Jasper County v. Allman, Admr. (1895), 142 Ind. 573, 42 N.E. 206.
*771 The reasoning, as announced in the House case, supra, is equally applicable today in that it says:
"The obligation thus imposed upon the board, to cause all bridges in the county to be kept in repair, with ample power to provide means to discharge the obligation, carries with it a corresponding right in every one having occasion, in the usual course of travel, to use the bridges, to have the obligation fulfilled, and the bridges kept in repair. And it seems to us to follow, that where the board negligently suffers such bridge to be out of repair, whereby a person, in the ordinary use of it, is injured in person or property, without his own fault, he must have an action against the board for the damages; otherwise, there will be a wrong without a remedy." 60 Ind. 580, 583. (Emphasis supplied)
It is impossible, then as now, to justify to an injured person that damages cannot be collected, simply upon the basis that the fault is upon the state and not upon a private person. This makes neither the pain less painful, or the cuts less deep.
The vestige of the governmental-proprietary distinctions still remained, however, and as Judge Arterburn stated in Perkins v. State, supra:
"There may be some logical reason why a government should not be liable for its governmental actions and functions. We do not have that question before us and need not at this time give it further consideration * * *." 251 N.E.2d 35.
However, he concludes by adding:
"* * * It seems to us to be consistent in this principal of law and its application in this jurisdiction that if certain municipalities and the county governments are liable to the extent of the operation of proprietary functions, then there is no reason why the state as a principal should not likewise be liable for its proprietary function. It is of little concern to the injured party whether the injury was caused by the city, county or state. We feel, to be consistent, the common law principle should be applicable to all governmental units alike." 251 N.E.2d 35. (Emphasis added)
With this progression of statements, the alternatives are eliminated. I would find that the state may be liable for negligence in the maintenance of its highways on the theory hereto announced, namely, if the cities and counties are liable in tort for what used to be considered governmental functions, then the state is also.
The appellee brings to the Court many policy arguments for holding the state immune, and they are well-reasoned. Impossibility of insurance, and the overwhelming number of claims that would surely result, being but two examples. Since municipalities and counties have been placed in the forefront of experiencing the results of such a decision, we see no reason why the state can not cope with them also.
The appellee's further contention is that a decision abrogating immunity violates the provisions of Article 4, § 24, of the Constitution of the State of Indiana, which provides:
"Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution, but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."
Judge Arterburn, commenting in Perkins v. State, supra, addressed that contention squarely by saying:
"We find no other constitutional provision with reference to suits against the State of Indiana. There is no plain, unequivocal statement in the Constitution that the State of Indiana shall be immune against suits imposing a liability for damages; only an inference might be drawn from the above section. As we read this section it occurs to us that the framers of the Constitution assumed that at common law the State was immune *772 from suit and authorized the legislature to modify such liability to the extent it may see fit, providing that no private acts or special acts were passed for the benefit of some individual. We are dealing here not with a constitutional prohibition, but rather with a principle of common law which has its roots in the ancient common law of England which held `The King can do no wrong' and hence could not be sued in any court of law. Blackstone's Commentaries on The Law, Gavits Ed., p. 111." 251 N.E.2d p. 32.
Thus, we, too, would find this section to be directive in nature, and not a mandatory prohibition. As further indicated in Perkins v. State, supra, and in numerous examples in appellee's brief, if a decision in the area of dispute here involved does open that often referred to Pandora's box, then it is within the province of the legislative branch to close it if they choose to do so.
The decision of the trial court should be reversed and remanded for further action not inconsistent with this opinion.