MABEL SNYDER, ADMINISTRATRIX v. LOUISE MOUSER ET AL.

[No. 470A70. Filed September 7, 1971. Rehearing denied October 13, 1971. Transfer denied September 19, 1972.]

---

*Dix, Patrick, Ratcliffe & Adamson,* of Terre Haute, for appellant.

*Cox, Zwerner, Gambill & Sullivan,* of Terre Haute, for appellees.

WHITE, J.—The County Department of Public Welfare of Sullivan County, (hereinafter County Department) and Louise Mouser, a County Department caseworker, placed a minor ward in the home of Mr. and Mrs. Robert J. Snyder. The ward is alleged to have had "homicidal propensities" known

to defendants. While living in the Snyder home the ward shot and killed Mr. Snyder. Mrs. Snyder, as administratrix of her husband's estate, brought this action for wrongful death against County Department and the caseworker alleging the death was proximately caused by defendants' negligent failure to warn decedent of the ward's "homicidal propensities." The trial court dismissed plaintiff's amended complaint on the separate motions of the defendants and this appeal followed the overruling of plaintiff's motion to correct errors. That motion indicates that the dismissal was based on a trial court holding that both defendants were immune to civil liability for the negligence alleged in the amended complaint.

As to the caseworker's claim of immunity, the answer is simple. IC 1971, 12-1-4-3 (formerly Ind. Acts 1936 [Spec. Sess.], Ch. 3, § 29, p. 12), Ind. Ann. Stat., § 52-1128 (Burns 1964), provides:

> "Neither the members of the state or county board, the administrator nor the several officers and employees of the state or county departments shall be personally liable, except to the state of Indiana or the county for any official act done or omitted in connection with the performance of their respective duties under the provisions of this act."

The complaint alleges that at all times pertinent defendant Mouser was a caseworker of the defendant County Department and was in the scope and course of her employment and official duties as such. This is tantamount to alleging that she was either an officer or an employee of the County Department and that her allegedly negligent omissions were official acts omitted. The language of the statute requires no interpretation or construction. It clearly proscribes personal liability (except to the state or county) for any official act omitted.

The statute comes to us without challenge as to its validity,[1] and we accept it at its face value. Indeed, plaintiff concedes

---

1. If it were so challenged jurisdiction would be in the Supreme Court. IC 1971, 33-3-2-7; Ind. Ann. Stat. § 4-214 (Burns 1964).

the statute's grant of immunity to the caseworker by stating in her reply brief:

"The protection provided under Burns 52-1128 to the administrator or the employees of the State or County Welfare Departments insofar as personal liability is concerned does not prohibit the bringing of an action to determine their wrong doing. It simply prohibits the enforcement of a personal judgment against the particular wrongdoer who is acting in his official capacity."

Plaintiff has cited no authority, and we are confident none exists, to support her implied suggestion that one immune from enforcement of a judgment for damages for certain alleged wrongdoing may nevertheless be prosecuted civilly for that alleged wrongdoing merely to obtain a judicial declaration that there was wrongdoing. On the contrary, it is well settled that the absence of a justiciable controversy relieves courts of the futile function of deciding abstract issues.[2]

As to the County Department's claim of immunity, defense counsel concede that the sovereign immunity of cities and counties, as well as the distinction (for immunity purposes) between their governmental and proprietary functions, has been abolished.[3] The County Department contends, however, that it is not merely a *county* department but that it is in reality an agency of the State of Indiana. Further, that *Perkins* v. *State* (1969), 252 Ind. 549, 251 N. E. 2d 30, 18 Ind. Dec. 555, 561, makes it clear that the immunity of the

2. "But unless some individual right, directly affecting the parties litigant, is thus brought in question so that a judicial decision becomes necessary to settle the matters in controversy between them relative thereto, the courts have no jurisdiction; and it would be a perversion of the purposes for which they were instituted, and an assumption of functions that do not belong to them, to undertake to settle abstract questions of law in whatever shape such questions may be presented." *Brewington* v. *Lowe* (1848), 1 Ind. 21, 23; *Indiana Alcoholic Beverage Commission* v. *Deets* (1962), 133 Ind. App. 444, 179 N. E. 2d 217.

3. *Brinkman* v. *City of Indianapolis* (1967), 141 Ind. App. 662, 231 N. E. 2d 169; *Klepinger* v. *Board of Commissioners of the County of Miami* (1968), 143 Ind. App. 155, 239 N. E. 2d 160.

State of Indiana for injurious acts committed in the exercise of governmental functions has not been abolished.[4]

There is merit to defendant County Department's argument that it is an agency of state government, but no present merit to the consequence ascribed thereto. The idea is neither ancient nor modern. It was enshrined as law in Indiana from 1895 to 1967.

There is a line of late nineteenth century Indiana cases which hold counties liable for negligence in bridge maintenance. *Board of Commissioners of Jasper County* v. *Allman* (1895), 142 Ind. 573, 595, 42 N. E. 206, overruled those cases on the ground "that counties, being subdivisions of the State, are instrumentalities of government and exercise authority given by the State, and are no more liable for the acts or omissions of their officers than the State." Judge Monks who wrote that opinion later wrote *State, ex rel. Board of Comm. of the County of Hendricks* v. *Board of Comm. of the County of Marion* (1908), 170 Ind. 595, 85 N. E. 513, in which he said:

> "A county is an *involuntary* corporation organized as a political subdivision of the State by the legislature, the sovereign power, solely for governmental purposes. Such subdivisions are instrumentalities of government, exercising the powers delegated by the State and acting for the State. As the State is not liable for the acts or omissions of its officers, a county is not liable for the acts or omissions of its officers in relation to such functions, because they belong to the State. *Board, etc.* v. *Mowbray* (1903), 160 Ind. 10, 12, and authorities cited; *Board, etc.* v. *Allman* (1895), 142 Ind. 573, 39 L.R.A. 58, and cases cited; *Cones* v. *Board, etc.* (1894), 137 Ind. 404, and cases cited; *Board, etc.,* v. *Daily* (1892), 132 Ind. 73; *Smith* v. *Board, etc.* (1892), 131 Ind. 116; *Morris* v. *Board, etc.* (1892), 131 Ind. 285; *White* v. *Board,*

---

4. The *Perkins* opinion states:

"There may be some logical reason why a government should not be liable for its governmental actions and functions. We do not have that question before us and need not at this time give it further consideration, since the facts in this case show that the injurious act complained of in this case arose out of the proprietary function of the State of Indiana, namely the furnishing of housing facilities in a state park." (251 N. E. 2d at 34.)

*etc.* (1891), 129 Ind. 396; *Summers* v. *Board, etc.* (1885), 103 Ind. 262, 53 Am. Rep. 512." (Emphasis added.)

A variation of that same rationale rendered incorporated cities and towns immune as to their involuntary functions in which they acted as agencies of the state government[5], but held them liable for the manner in which they used their property in matters of purely local concern in which they acted voluntarily.[6]

The significant distinction between counties, and townships, school corporations (i.e., public *quasi* corporations), on the one hand and incorporated cities and towns on the other hand, was that the former were considered to be *involuntary* corporations and the latter to be *voluntary* corporations. As the foregoing quotation indicates, it was assumed that those invountary corporations were "organized . . . solely for governmental purposes." Thus all their functions were conclusively presumed to be governmental functions and, as such, were clothed with governmental immunity.[7]

---

5. "Municipal corporations proper, as cities and towns, do not enjoy as extended immunity from liability *ex delicto* as do public *quasi*-corporations, which are mere subdivisions of the State, organized for the purpose of administering the local affairs of government. As it is possible, however, to devolve upon cities and towns duties which they administer solely for the public good, it follows that with respect to such duties they are regarded as acting on behalf of the State, and not in their private or corporate capacity. Speaking in general terms, it may be said that the duties which municipalities perform with respect to the public health, charities, and schools, in the protection of property against fire, and in the maintenance of the peace, are ordinarily regarded as performed as representatives of the general public, and in such cases cities and towns enjoy the same immunity from actions *ex delicto* as does the State." *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 141, 78 N. E. 657.

6. "The city was under no obligation to light its streets. It enjoyed that authority, but the exercise of the power was wholly a matter of its own volition.
\* \* \*

"At least as to property voluntarily held, if the exercise of the power confers a benefit upon the people of the community, in their local capacity, or if it is a means to the attainment of some municipal end, we are of opinion that the corporation is held to the exercise of due care concerning such property." *Aiken* v. *City of Columbus, supra*, n. 5, 167 Ind. at 144, 147.

7. In *Hummer* v. *School City of Hartford City* (1953), 124 Ind. App. 30, 40, 112 N. E. 2d 891, quoting from *Freel* v. *The School City of Crawfordsville* (1895), 142 Ind. 27, 28, 41 N. E. 312, we said:

As in the law of *respondeat superior,* the status of counties as agencies of the State arises out of the *power* of control, not out of the exercise of that power.[8] Nothing in any of the reported cases in which counties, townships or school corporations have been accorded governmental immunity as agencies of the state has ever suggested that the quantum of state level control provided for by statute, or actually exercised, has any bearing at all on the agency status or on the local unit's immunity. For instance until *Brinkman* v. *City of Indianapolis, supra,* n. 3, city police activities were always immune, but as *Arnett* v. *State* (1907), 168 Ind. 180, 182, 80 N. E. 153, demonstrates, statutory authority for actual control of city police by state officers has varied greatly in different times. The fact, if it be a fact, that welfare statutes authorize a greater quantum of state control than is presently authorized

---

" 'School corporations in this State are a part of the educational system of the State. . . . Such corporations are but the agents of the State, for the sole purpose of administering the State system of public education. . . .

" 'School corporations, therefore, are governed by the same law in respect to their liability to individuals for the negligence of their officers or agents as are counties and townships.

" 'It is well established that where subdivisions of the State are organized solely for a public purpose, by a general law, that no action lies against them for an injury received by a person on account of the negligence of the officers of such subdivision, unless a right of action is expressly given by statute.' "

Continuing on page 42, we said:

"We are aware of a modern tendency for many school corporations to engage in commercial enterprises and proprietary functions only remotely related to the public education. There is reason why, under such circumstances, school officials and perhaps school corporations themselves should be held liable for their torts in connection with such activities. However, in view of the formidable precedent established by the foregoing authorities, which have established a uniform rule of governmental immunity from all tort liability with respect to all involuntary units of government, including school cities, counties and townships, we are persuaded that the modification of so firmly an established principle with its broad consequences in public affairs presents a matter for general restatement of public policy by legislative enactment."

8. " '. . . [T]he real test of liability is the power or right of control. . . .

" 'It is not, however, essential that the master's control be in fact exercised, if he in fact has the power of control.' 35 Am. Jur. *Master and Servant* § 539, p. 967 [now 53 Am. Jur. 2d § 413, p. 422]." *Van Drake* v. *Thomas* (1942), 110 Ind. App. 586, 597, 38 N. E. 2d 878.

for most other county boards and county officers (but perhaps less control than the statutes in *Arnett* authorize the state to exercise over some city police forces) is no ground for any distinction as to tort liability or state agency, as between county welfare departments and other departments of county government.

Athough County Department is a state agency, just as every county office, board, commission, and department is, it is also quite obviously a county department[9] in more than merely its name. It is administered by a county board of public welfare[10] whose members are county residents appointed by local judges[11] and a "county director" who must be a county resident, if possible, appointed by the board subject to state board removal powers,[12] and its welfare activities are confined to the county.[13]

The dismantling of the state agency theory of county governmenal immunity began with *Flowers* v. *Board of Commissioners of the County of Vanderburgh* (1960), 240 Ind. 668, 168 N. E. 2d 224, which held a county liable for its tort in connection with a proprietary function (operating an admission charging skating rink in a park). In so doing it "disapproved" inconsistent statements in *Hummer* v. *School City of Hartford City* (1953), 124 Ind. App. 30, 112 N. E. 2d 891, which of course included the statement (124 Ind. App. at 42) to the effect that all involuntary units of government, including counties, enjoy *governmental* immunity from all tort lia-

---

9. *Watson* v. *Department of Public Welfare of Harrison County* (1960), 130 Ind. App. 659, 663, 165 N. E. 2d 770 (which did not involve tort liability, but was a neglected child case in which the State's status as a party was questioned), referred to the statutes authorizing state control and said: "As can be seen by the statutes concerning public welfare, state and county departments are rather closely interwoven, and the state has a definite interest in the disposition of all cases handled by the county departments." That statement is as much a recognition of the county department's status as a county department as it is of its status as an agency of state government.

10. Ind. Ann. Stat. § 52-1117 (Burns 1964).

11. Ibid. § 52-1118.

12. Ibid. § 52-1119.

13. Ibid. § 52-1123.

bility, including torts in connection with proprietary activities. (see p. 339, n. 7.)

The next step was taken in *Brinkman* v. *City of Indianapolis* (1967), 141 Ind. App. 662, 231 N. E. 2d 169, which held that a city was liable for the torts of its police officers under the doctrine of *respondeat superior*. That holding is completely inconsistent with the rationale of county governmental immunity since it is based on a repudiation of the doctrine which had accorded governmental immunity to cities when they acted as state agencies.[14]

Then came *Klepinger* v. *Board of Commissioners of the County of Miami* (1968), 143 Ind. App. 155,[15] 239 N. E. 2d 160, 15 Ind. Dec. 92, which arose out of an automobile accident on a bridge allegedly left in an unsafe condition after partial repair by the board of county commissioners. The trial court granted the defendant summary judgment on the ground of governmental immunity. On appeal we noted that cities had consistently been held liable for such negligence and concluded that bridge repair was a proprietary function.[16] We could have rested our decision on authority of *Flowers,* but we chose to state an even broader rule, in saying:

> "We are of the opinion that the decision and reasoning of the *Brinkman* case should be applied to the counties of Indiana and, therefore, hold that the doctrine of governmental immunity as it applies to the counties of Indiana is hereby abrogated and that counties may now be held liable for the tort of its officers, agents or employees under the doctrine of respondeat superior.
>
> "It is further our opinion that in determining the tort liability of a county or a city, our courts can now ignore the

14. See *ante,* p. 339, n. 6.

15. This is Wayne Klepinger's case. In his wife's, Shirley's, case, a substantially identical opinion appears at 143 Ind. App. 178. North Eastern 2d and Indiana Decisions published only Mrs. Klepinger's case. The second appeal of Mrs. Klepinger's case is reported at — N. E. 2d —, — Ind. Dec. —.

16. On May 27, 1971, our brethren of Division 1 held state highway repair to be a governmental function and overruled *Klepinger* to the extent it is inconsistent with that holding. *Campbell* v. *State* (Ind. App. 1971), 269 N. E. 2d 765, 768, 25 Ind. Dec. 615, 618.

governmental-proprietary distinction and render judgments and assess damages without regard to the policy limits of any insurance carried by the city or county." (143 Ind. App. at 201.)

These statements may be *dicta,* but so long as neither the Supreme nor the Appellate Court disapproves or overrules *Brinkman* there is no logical basis on which counties can be held immune from liability for their torts committed in the performance of their governmental functions.

The Supreme Court's latest immunity case is *Perkins* v. *State* (1969), 252 Ind. 549, 251 N. E. 2d 30, 18 Ind. Dec. 555. In reasoning leading up to its holding that the state itself was no longer immune from liability for its torts in connection with its proprietary functions, the Supreme Court there noted that "a municipality, *an instrument of the state government,* is liable at least for its proprietary acts where someone has been tortiously injured" and that "a county is liable where a plaintiff has been injured on a skating rink." (Our emphasis.) It further noted: "These governmental agencies are in reality a part of the state government."

In *Klepinger* we expressed the view that in *Flowers* the Supreme Court "recognized that for the purposes of tort law, the general principle is that cities and counties should be treated alike." (143 Ind. App. at 189.) In *Perkins* it said: "If the cities, towns and lesser agencies of the state are liable under a principle of law, consistently then the state, as we have previously said, should be liable for its acts under like circumstances."

Unfortunately our Supreme Court has never said that "cities, towns and lesser agencies of the state" are liable for their torts committeed in the performance of governmental functions. Judge Arterburn's opinion in *Perkins* appears to have been carefully worded to avoid any such implication and to reserve that question for future consideration in a case in which it is an issue.[17] But even though they

---

17. The statement that "[t]here may be some reason why *a government* should not be liable for its governmental actions and functions"

are unsupported by any word of commendation from the Supreme Court,[18] *Brinkman* and *Klepinger* are precedents binding on the trial courts of Indiana and not lightly to be disregarded by this court.[19] Sullivan County is, on authority of *Brinkman* and *Klepinger,* answerable for its torts whether committed in the performance of its governmental functions or its proprietary functions. It makes no difference whether the county department is a park board, a board of commissioners, or a welfare department.

County Department urges that it has an immunity or privilege arising out of the discretionary nature of the acts in which it was engaged. The cases and authorities it cites relate to the personal liability of officers rather than to the *respondeat superior* liability of the governmental unit itself. But without pausing to determine whether the privilege is applicable to the *superior* as well as the agent, we hold that the negligence charged in the complaint was not within the ambit of discre-

---

(our emphasis), would appear to apply to a government of a city or a county as well as to state government. (251 N. E. 2d at 35.) The petition to transfer *Campbell* v. *State* (Ind. App. Div. 1, 1971) 269 N. E. 2d 765, 25 Ind. Dec. 615, *if properly drawn*, will present the question thus reserved.

18. It did deny transfer (without opinion) but, as was said in *Citizens Independent Telephone Company* v. *Davis* (1951), 229 Ind. 217, 218, 97 N. E. 2d 490, "[w]hen a transfer is denied, it does not necessarily follow that the result, or the reasoning by which the result is reached by the Appellate Court, is thereby approved by this court, since the petition to transfer may not present such matters for our determination." For other views of the effect of a denial, see Bunnell, *The Petition to Transfer*, 3 Ind. Legal Forum 443, 453 (1970).

Any remaining doubt as to the effect of a denial of transfer should be resolved by the adoption of Appellate Rule 11(B)(4), effective 1/1/72, which provides:

"The denial of a petition to transfer shall have no legal effect other than to terminate the litigation between the parties in the Supreme Court."

19. *Daily* v. *Pugh* (1921), 83 Ind. App. 431, 439, 131 N. E. 836; *Todd* v. *Ehresman* (1961), 132 Ind. App. 440, 448, 175 N. E. 2d 425. As previously noted, *ante,* p. 342, n. 16, *Klepinger* has been overruled but only in its holding that bridge repair is a proprietary function. *Campbell* v. *State* (Ind. App. Div. 1, 1971), 269 N. E. 2d 765, 25 Ind. Dec. 615, 618. It could be argued that *Campbell* has added weight to the dictum of *Klepinger* that counties are no longer immune as to governmental activities.

tion. As stated in *Adams* v. *Schneider* (1919), 71 Ind. App. 249, 255, 124 N. E. 718:

> "A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and if so in what particular way, and in the absence of corrupt motives, in the exercise of such discretion, he is not liable. His duties, however, in the performance of the act, after he has once determined that it shall be done, are ministerial, and for negligence in such performance, which results in injury, he may be liable in damages."

The complaint does not charge County Department with negligence in deciding to place the child in question in a foster house, or with negligence in deciding to place him in decedent's home. The negligence charged was in the performance of the act of placement after the discretionary decision had been made; negligence in failing to warn of known vicious propensities.

County Department also cites the proviso of IC 1971, 12-1-10-2, Ind. Ann. Stat., § 52-1260 (Burns 1964), which excludes "confidential medical records and other confidential records" from its publicity provisions. Also cited is IC 1971, 12-1-10-3, Ind. Ann. Stat., § 52-1260a (Burns 1964), which prohibits knowingly permitting the use of any lists or names of welfare recipients "for any purpose not directly connected with the administration of public assistance," and the state board's rule which confines records and information concerning recipients "to purposes directly connected with the administration of assistance." Assuming the possibility that some of County Department's information (if any) concerning the boy's dangerous propensities was of such a privileged or confidential nature that it could not be revealed even to foster parents, that would be a matter of defense not revealed in the allegations of the complaint. It is difficult, however, to envision how it would not be "directly connected with public assistance" or how it would be a violation of any confidence or privilege to

tell foster parents, or prospective foster parents, everything about the foster child which might be reasonably calculated to affect his and their safety and well being while living together in the relationship of parent and child.

That argument is a part of the larger argument that defendant had no duty to disclose to decedent the child's known dangerous propensities, because no statute imposes that duty. Duties, the violation of which may constitute negligence, arise by operation of the common law and in the absence of any statute, out of knowledge of situations.[20] With respect to whether the County Department owed decedent the duty of disclosure, we hold that the complaint states a claim on which relief can be granted. Whether under the circumstances of this case such a duty actually existed, its nature and extent, whether it was breached, whether its breach was a proximate cause of death, and whether there was freedom from contributory negligence, are all questions of the type which normally are answered by weighing the evidence adduced at a trial.[21]

For the reasons stated the judgment is affirmed as to defendant-appellee Louise Mouser and reversed as to defendant-appellee The County Department of Public Welfare of Sullivan County, Indiana, and remanded to the trial court for further proceedings not inconsistent with the views expressed in this opinion.

Affirmed in part.

Reversed and remanded in part.

Hoffman, C.J., Sharp and Staton, JJ., concur.

NOTE.—Reported in 272 N. E. 2d 627.

---

20. *Vandalia Railway Company* v. *Duling* (1915), 60 Ind. App. 332, 344, 109 N. E. 70. "The law requires of every person that he shall exercise due care to avoid injury to others and to protect himself, and the vigilance required is always commensurate with the danger to be apprehended." *Lake Shore & Michigan Southern Railway Company* v. *Brown* (1908), 41 Ind. App. 435, 437, 84 N. E. 25.

21. *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215, 231, 17 Ind. Dec. 401, 423; *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N. E. 2d 688, 696, 19 Ind. Dec. 88, 97.